UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VERTIME B.V., | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO. _____ |
| v. | : |
| | : |
| NEW DOVER GROUP, LTD., | : MAY 22, 2017 |
| Defendant. | : |

## VERIFIED COMPLAINT

The plaintiff for its complaint against the defendant alleges as follows:

## PARTIES

1. The plaintiff, Vertime B.V. ("Vertime"), is a company established and existing under the laws of The Netherlands, with its principal place of business at Herengracht 466, 1017 CA Amsterdam, Netherlands, and a Swiss branch with registered offices at Via Cantonale, 6928 Manno (Switzerland). Vertime is an affiliate of Timex Group USA, Inc., a Delaware corporation with its principal place of business in Middlebury, Connecticut.

2. Vertime is a company engaged in the business of the design, production, distribution, marketing, promotion and sale of watches and other luxury goods based on licenses for models, trademarks, patents, designs, and copyrights belonging to internationally renowned brands, designers, and fashion houses.

3. Vertime is the exclusive licensee of certain trademarks belonging to fashion houses internationally known for the high quality and positioning of their products, trademarks, and sale network.

{W2843739;9}

4. The defendant, New Dover Group, Ltd. ("NDG"), is a New York corporation with its principal place of business at 9 Pinecrest Road, Valley Cottage, New York, 10989.

## JURISDICTION AND VENUE

5. This is an action for breach of contract seeking injunctive relief.

6. This Court has personal jurisdiction over NDG in that NDG is a New York corporation with its place of business at 9 Pinecrest Road, Valley Cottage, New York.

7. There is complete diversity of citizenship in that Vertime is a Netherlands B.V., is owned by Timex Nederland B.V. (a Netherlands B.V.), and is an affiliate of Timex Group USA, Inc., and these entities are not citizens of New York.

8. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

9. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

## COUNT ONE (Breach of Contract)

10. Vertime and NDG entered into three distribution agreements (collectively, the "Agreements"):

    a. Distribution Agreement for Salvatore Ferragamo Timepieces (Exhibit A);

    b. Versace Distribution Agreement (Exhibit B); and

    c. Versus Distribution Agreement (Exhibit C).

11. The Agreements provided NDG with certain exclusive rights to promote and sell certain Salvatore Ferragamo, Versace, and Versus timepieces (the "Products") and to use certain trademarks (the "Trademarks"), in the United States and the Caribbean, during the term of the Agreements.

12. The Agreements contained terms that were intended to ensure that the quality, image, and positioning of the Products and Trademarks would be maintained during and after the expiration of the Agreements. (See Agreements, §§ 2, 3, 5, 6, 7, 8, 9, 10, 11, & 12.)

13. The Agreements were effective until they expired on December 31, 2016.

14. Upon the expiration of the Agreements, NDG was obligated to, *inter alia*:

   a. "immediately stop selling or promoting the Products";

   b. "immediately and permanently discontinue to use the Trademarks, or any materials which may in any way indicate or create the impression that [NDG] continues to be or is authorised [*sic*] to use the Trademarks or to sell the Products";

   c. "within two (2) months permanently remove all signs representing the Trademarks and promptly destroy or surrender to Vertime all displays, letterhead paper, forms, sales, promotional and advertising material containing or showing the Trademarks";

   d. by January 5, 2017, "provide Vertime with a complete, detailed and up-to-date statement of all Products in stock at its premises or elsewhere"; and

   e. "remain obliged not to effect discounts, sales, or special promotions relating to the Products stocked at its premises or elsewhere, without Vertime's prior written approval." (Agreements § 12.1.)

15. The Agreements provided for the possibility of a six month "Sell-off Period" during which NDG could continue to sell its inventory of Products if, *inter alia*, NDG fully complied with all terms and conditions of the Agreements. (Agreements § 12.4.)

16. The "Sell-off Period" has not occurred and cannot occur because, in addition to NDG's various breaches of the Agreements set forth below, NDG was obligated to "promptly pay Vertime all sums owed to Vertime, without set-off or other diminution . . . ." (Agreements § 12.1(ii)) and NDG has failed to do so.

17. Vertime is entitled to fully inspect NDG's remaining stock of Products. (Agreements §12.4.)

18. Vertime has the option of repurchasing NDG's stock of Products, in full or in part, after being provided with a complete, detailed, and up-to-date statement of such stock, and after conducting an adequate inspection of such stock. (Agreements §§ 12.1(vi), 12.4.)

19. Vertime has repeatedly requested NDG to provide to Vertime a complete, detailed, and up-to-date statement of all Products in NDG's stock, and has repeatedly notified NDG of its intention to exercise its right to inspect the Products.

20. The Agreements prohibit NDG from selling Products to any individuals or entities that are resellers, wholesalers, or distributors; i.e., any individuals or entities that are not retail stores or final customers.

21. These post-expiration obligations are critical to maintaining the quality, image, and positioning of the Products and Trademarks, and Vertime's relationships with its other distributors and customers.

22. Upon information and belief, NDG has breached and is in continuing breach of the Agreements by:

    a. continuing to promote and sell the Products;

    b. promoting and selling the Products in a manner that is not authorized by the Agreements;

    c.    continuing to use the Trademarks and creating the false impression that NDG is authorized to use the Trademarks and sell the Products;

    d.    failing to permanently remove all signs representing the Trademarks and destroying or surrendering to Vertime all displays, letterhead paper, forms, sales, promotional and advertising material containing or showing the Trademarks;

    e.    failing to provide Vertime with a complete, detailed and up-to-date statement of all Products in stock at its premises or elsewhere, despite repeated requests;

    f.    refusing to honor Vertime's right to inspect the Products; and

    g.    upon information and belief, selling, or attempting to sell, the Products to individuals or entities that are not retail stores or final customers, e.g., other distributors.

23.    In May 2017, representatives from Vertime went to NDG for the purpose of inspecting its inventory, but NDG frustrated any chance of an adequate inspection by, *inter alia*, only allowing inspection of certain limited portions of NDG's inventory that NDG selected for inspection, and not allowing Vertime's representatives to take notes, photographs, or otherwise record any information about NDG's inventory.

24.    Vertime provided notice to NDG of breaches of the Agreements as well as an opportunity to cure the breaches.

25.    NDG has failed to cure the breaches.

26.    As a result of NDG's breaches of the Agreements, which Vertime is informed and believes are continuing, Vertime has suffered and continues to suffer irreparable harm, for which

Vertime has no adequate remedy at law, entitling Vertime to preliminary and permanent injunctive relief, in that, among other things:

    a. NDG's acts and omissions have impeded Vertime's business relationship with its new distributor;

    b. NDG's acts and omissions have caused significant confusion in the market with regard to the Products;

    c. NDG's acts and omissions have damaged the quality, image, and positioning of the Products and Trademarks;

    d. NDG's acts and omissions have harmed the Trademark's goodwill; and

    e. NDG's acts and omissions have harmed Vertime's goodwill.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Vertime respectfully requests the following

1. Preliminary and permanent injunctive relief as to New Dover Group, Ltd., and those in active concert or participation with it, including, but not limited to, the following:

    a. An Order enjoining New Dover Group, Ltd., and those in active concert or participation with it, from

        i. selling or promoting the Products; and

        ii. using the Trademarks, or any materials which may in any way indicate or create the impression that NDG continues to be or is authorized to use the Trademarks or to sell the Products;

    b. An Order directing New Dover Group, Ltd., and those in active concert or participation with it:

        i. to immediately and permanently remove all signs representing the Trademarks and promptly destroy or surrender to Vertime all displays, letterhead paper, forms, sales, promotional and advertising material containing or showing the Trademarks;

        ii. to provide Vertime a complete, detailed, and up-to-date statement of all Salvatore Ferragamo, Versace, and Versus Products in NDG's stock at NDG's premises or elsewhere that that includes, at least, the style, quantity, serial numbers, and location of all Products;

        iii. to permit Vertime an adequate opportunity to inspect all Salvatore Ferragamo, Versace, and Versus Products in NDG's stock with no

    restrictions on recording serial numbers, taking notes or photographs, or otherwise recording information about NDG's stock of these items;

  iv. to provide Vertime an opportunity to repurchase some or all of the Products, after receipt of the detailed, up-to-date inventory list, and after Vertime's inspection of the Products; and

2. Such other and further relief as this Court deems just and proper.

                THE PLAINTIFF,
                VERTIME B.V.

Date: May 22, 2017    By: _/s/ James K. Robertson_
                James K. Robertson, Jr. (JR8962)
                Todd R. Michaelis (TM6839)
                Carmody Torrance Sandak & Hennessey LLP
                50 Leavenworth Street
                Waterbury, Connecticut 06721
                Tel: 203-573-1200
                Fax: 203-575-2600
                jrobertson@carmodylaw.com
                tmichaelis@carmodylaw.com

## VERIFICATION

I, Paolo Marai, hereby certify that, to the best of my knowledge, and based on the business records of Vertime B.V., the facts contained in the Verified Complaint are true.

THE PLAINTIFF,
Vertime B.V.

By _____
Paolo Marai
Its President and CEO

STATE OF CONNECTICUT     }
                          }  ss: Middlebury
COUNTY OF NEW HAVEN      }

On this 22nd day of May, 2017, Paolo Marai appeared before me by video conference and made oath to the truth of the matters contained in foregoing verified complaint.

_____
Notary Public
My Commission Expires: 10/31/2017

Katherine H. Callini
NOTARY PUBLIC
State of Connecticut
My Commission Expires Oct. 31, 2017

{W2843739;9}