

**Todd R. Michaelis**
Associate
Direct: 203.578.4287
Fax: 203.575.2600
tmichaelis@carmodylaw.com

50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06702

July 27, 2017

**Via: CM/ECF Filing**

Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

**Re:  Vertime B.V. v. New Dover Group, Ltd.; No. 17-cv-3844
Premotion Conference re: Motion to Stay and Refer to Arbitration**

Your Honor:

The undersigned represents Plaintiff/Counterclaim Defendant, Vertime B.V. ("Vertime"), and Third-Party Defendant, Timex Group USA, Inc. ("Timex"), in the above matter. We write pursuant to your honor's Individual Rules of Practice Section II. A. to request a premotion conference regarding Vertime's and Timex's Motion to Stay and Refer to Arbitration the claims in the Counterclaim/Third-Party Complaint ("Counterclaim") filed by Defendant/Counterclaim Plaintiff/Third-Party Plaintiff, New Dover Group, Ltd. ("NDG") [D.N. 37]. For the reasons set forth below, this matter should be stayed pursuant to 9 U.S.C. § 3 (and referred to arbitration in Switzerland pursuant to 9 U.S.C. § 206) because the factual and legal issues raised by the claims set forth in the Counterclaim now dominate this lawsuit and are required to be arbitrated pursuant to the agreements on which they are based.

**The Basis for the Anticipated Motion to Stay and Refer to Arbitration**

On July 6, 2017, NDG filed the Counterclaim against Vertime and Timex.[1] The Counterclaim alleges three causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) compensation for clientele. All of the causes of action in the Counterclaim arise out of or are directly related to distribution agreements between Vertime and NDG[2] (the "Agreements") pursuant to which NDG was a distributor of Vertime products in the United States and Caribbean markets.

---

[1] The Counterclaim also names Timex Nederland, B.V.; however, as of the date of this letter, Timex Nederland B.V. has not been served.

[2] The three most recent agreements are attached to the First Amended Verified Complaint as Exhibits A, B, and C. The other agreements include a 2010 agreement pertaining to Versace products, a 2011 agreement pertaining to Salvatore Ferragamo products, a 2013 agreement pertaining to Versace products, a 2013

{W2913110;2}

The First Counterclaim alleges breaches of the Agreements: "The above-alleged conduct by Vertime / Timex constituted breaches of the agreements between New Dover and Vertime." (Counterclaim ¶ 138.) The Second Counterclaim alleges breaches of the covenant of good faith and fair dealing implied in the Agreements: "Vertime / Timex's conduct as alleged above . . . constituted breaches of the implied covenant of good faith and fair dealing . . . ." (Counterclaim ¶ 141.) The Third Counterclaim alleges a cause of action under Swiss law for Compensation for Clientele and is also is based on and related to the Agreements. (See, e.g., Counterclaim ¶¶ 146-149 all referring to the Agreements.)

Each of the Agreements contains a mandatory agreement to arbitrate that states:

> Any dispute, controversy or claim arising out of or in relation to this contract, including the validity, invalidity, breach or termination thereof, **shall be resolved by arbitration** in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers of Commerce in force on the date when the Notice of Arbitration is submitted in accordance with these Rules. The number of arbitrators shall be three and the arbitral proceedings shall be conducted in English. The seat of the arbitration shall be Lugano (Switzerland).
> [Nevertheless], VERTIME reserves the right to institute any action against DISTRIBUTOR before any ordinary court or tribunal of competent jurisdiction.

(Agreements § 14.3, emphasis added.) It is clear from NDG's allegations that all of NDG's counterclaims arise out of and/or are directly related to the Agreements; therefore they must be stayed, 9 U.S.C. § 3, pending arbitration in Switzerland, 9 U.S.C. § 206.

The federal courts have an "emphatic federal policy in favor of arbitral dispute resolution" that "applies with special force in the field of international commerce." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 856 (2d Cir. 1987). Where issues are required to be arbitrated, 9 U.S.C. § 3 mandates a stay. See, e.g., Katz v. Cellco Partnership, 794 F.3d 341, 345-46 (2d Cir. 2015). It is clear that NDG's counterclaims must be stayed pending arbitration. First, as set forth above, it cannot be disputed that NDG agreed to arbitrate as each of the Agreements includes an agreement to arbitrate.[3] Second, NDG's counterclaims are within the scope of the arbitration agreements, because

---

agreement pertaining to Versus products, and a 2013 agreement pertaining to Salvatore Ferragamo products. These eight distribution agreements are collectively referred to herein as the "Agreements."

[3] Although Timex is not a signatory to the Agreements, a signatory is estopped from resisting arbitration with a non-signatory when the signatory has treated the non-signatory as if it were a signatory. See JLM Industries, 387 F. 3d at 177; Choctaw Generation Limited Partnership v. American Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001) ("the circuits have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."); Smith/Enron Cogeneration Limited Partnership, Inc. v. Smith Cogeneration International, Inc., 198 F.3d 88, 97 (2d Cir. 1999) (holding that signatory could not deny arbitration with non-signatories that signatory treated as one entity in separate lawsuit). In the context of the Counterclaim, the arbitration agreements are equally applicable to Timex. See id.

{W2913110;2}

the agreements to arbitrate are broad and encompass "[a]ny dispute, controversy or claim arising out of or in relation to [the Agreements]."

The only remaining question is whether to stay the balance of the proceedings pending arbitration. JLM Indus., Inc. v. Stolt—Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004); Yours2U Ltd. v. Blue Phoenix Media Inc., 2017 WL 2562334, at *4 (S.D.N.Y. June 5, 2017). The decision to stay the balance of the proceedings is within the discretion of the court, and it is appropriate to do so when the arbitrable claims dominate the lawsuit. Genesco, Inc., 815 F.2d at 856. "The courts in this district have consistently granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources." Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg, No. 92-cv-2236, 1992 WL 249914, at *2 (S.D.N.Y. Sep. 22, 1992); see also Hikers Industries, Inc. v. William Stuart Industries (Far East) Ltd., 640 F. Supp. 175, 178-79 (S.D.N.Y. 1986) (where common questions of law and fact are likely to be determined in an arbitration, nonarbitrable claims should also be stayed).

Here, the legal and factual issues in NDG's arbitrable claims overlap with many of the legal and factual issues in Vertime's nonarbitrable claims[4] because NDG's counterclaims form the basis of its defense of Vertime's claims. (See, e.g., NDG's First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth Affirmative Defenses, all of which refer directly to the Counterclaim. [D.N. 37.]) NDG's counterclaims dominate the factual and legal issues in this matter as they involve more parties, are based on Swiss law, and are more numerous and complex than those presented by Vertime's claim for a permanent injunction. Therefore, the balance of this case, Vertime's claim for a permanent injunction, should also be stayed, including all discovery, pending arbitration of NDG's counterclaims. Genesco, Inc., 815 F.2d at 856; Midland Walwyn Capital Inc., 1992 WL 249914 at *2 ("The law of this circuit . . . is that discovery on the substance of the subject matter of a dispute to be arbitrated should be denied . . . .").

**Vertime and Timex Request that the Court Stay the Deadline to Move or Answer the Counterclaim, and Set a New Deadline at the Premotion Conference.**

Judge Karas's Individual Rules of Practice provide for a stay of responsive pleading deadlines pending a premotion conference in the context of a motion to dismiss. While the motion proposed by Vertime and Timex is a motion to stay (as necessitated by recent Second Circuit authority[5]), not a motion to dismiss, the rationale for staying the deadline for a response to the Counterclaim is equally applicable. Therefore, Vertime and Timex respectfully request that the Court stay the deadline to file a motion or answer responsive to the Counterclaim until a new deadline can be set at the premotion conference.

Very truly yours,
/s/ Todd R. Michaelis (TM6839)

---

[4] Vertime's remaining claim for a permanent injunction is not required to be arbitrated because the arbitration agreement reserves the right of Vertime to bring that claim in this Court.

[5] See Katz v. Cellco Partnership, 794 F.3d 341, 345-46 (2d Cir. 2015) (Section 3 of the Federal Arbitration Act requires stay of proceedings, not dismissal).