UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VERTIME B.V., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> NEW DOVER GROUP, LTD., : <br> : <br> Defendant. : | CIVIL ACTION NO. 7:17-cv-03844(KMK) <br><br> SEPTEMBER 21, 2018 |

**VERTIME B.V.'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION FOR CONTEMPT AND SANCTIONS**

Plaintiff Vertime B.V. ("Vertime") submits this Reply Memorandum of Law in Support of its Motion for Contempt, Sanctions, and to Appoint a Receiver ("Motion"), pursuant to Local Rule of Civil Procedure 6.1(b), to respond to New Dover Group, Ltd.'s ("NDG") Memorandum of Law in Opposition [D.N. 122] ("NDG Opp.") and the Memorandum of Law in Opposition filed by Chaim Fischer and "Stuhrling Outlet, LLC"[1] [D.N. 119] ("F-S Opp.").

**I.    REPLY TO NDG'S OPPOSITION**

**A.    NDG Admits that It Misled the Court and Vertime.**

Vertime's Motion seeks sanctions against **_NDG_** because **_NDG_** made false and misleading statements to the Court and Vertime. NDG is not, at this time, seeking sanctions against Mr. Werzberger or NDG's prior counsel.[2] Mr. Friedmann's Declaration shows that these individuals were manipulated by NDG (i.e., Mr. Friedmann) to testify falsely and make false representations. Mr. Friedmann states that he is the President of NDG, he "was the person on behalf of NDG who negotiated with Stuhrling," and he "did not discuss the progress and completion of those sales

---

[1] Vertime's Motion was directed to Chaim Fischer, Stuhrling Original, LLC, and Stuhrling Outlet, which are referred to herein as "Fischer-Stuhrling." Vertime notes that Stuhrling Original, LLC did not respond to Vertime's Motion.

[2] Nevertheless, Vertime reserves all rights with regard to these individuals.

with Mr. Yiddy Werzberger or NDG's counsel." [D.N. 123 ¶¶ 1, 4-5.] Nevertheless, he/NDG sent these people to testify and argue before this Court. In other words, NDG intentionally kept its fact witness in the dark so that he would testify falsely (see Mot. at 3), and ensured that its counsel did not know the truth so that its counsel would base its argument for NDG on a false set of facts, for as long as possible (see Mot. at 3-5).[3] NDG's prior counsel argued that NDG "has respect for this process." (June 15, 2017 Hr'g Tr. at 269.) Clearly this is not the case.[4]

### B. Mr. Friedmann's Assertion that there Was a "Final" or "Arms-Length" Sale to Fischer-Stuhrling Is False and Is Contradicted by Fischer-Stuhrling.

Mr. Friedmann's claim that the "sales" to Fischer-Stuhrling were "final sales" (NDG Opp. at 2, 4) is false and is contradicted by Mr. Fischer's testimony. Mr. Fischer explained the transaction as follows

> I made it clear to [Mr. Friedmann] that I can take the goods, can buy the goods, but it's going to have to be at my terms and it's going to have to be at a very, very significant discount. I could only pay him as I sell it. And if he agrees to that, then he can decide to execute the transaction. He wasn't happy. He pushed and asked me to actually, you know, buy it and pay at his terms. But I didn't agree. And the last I knew, it was sometime in June, he said all right, I guess you win.

(C. Fischer Dep. at 33.) This is not a "final sale." Indeed, nothing was final about NDG's arrangement with Fischer-Stuhrling and it would be ongoing today if Vertime had not tracked down the truth. **As Mr. Fischer put it: "So, I just said when you're ready, . . . deliver the goods and I'll try to sell it." (Id.)**

---

[3] Mr. Friedmann's manipulation of counsel appears to have continued through at least October 2017, at which point NDG represented to the Court through counsel that it "essentially shuttered its business as a result of the preliminary in junction, remains bound by its terms and unable to sell a substantial stock of rapidly depreciating merchandise." [D.N. 58 at 4.] Further, it would be reasonable to infer that Mr. Friedmann only disclosed the truth to NDG's counsel at or about the time of Mr. Fischer's deposition, June 26, 2018, when NDG's prior counsel withdrew.

[4] Incredibly, after this outrageous conduct, which only came to light through Vertime's laborious efforts to cut through NDG's and Fischer-Stuhrling's concealment and prove sales were ongoing, Mr. Friedmann has the audacity to ask the Court to believe that the Products actually were transferred to Fischer-Stuhrling on the dates on the invoices. (Friedmann Decl. ¶5.) His unbelievably convenient claims are not credible.

{W3043833;3}                                           2

This was also not an "arms-length" transaction, contrary to NDG's assertions (NDG Opp. at 2, 4). An agreement entered into under duress is not arms-length. See Morgan Stanley Capital Group, Inc. v. Public Utility District No. 1 of Snohomish County, 554 U.S. 527, 554 (2008); see also CB Walden Village, LLC v. Bd. Of Assessment Review, 44 Misc.3d 1214(A), at *3 (NY Supreme Ct. July 24, 2014) (recognizing that a transaction is not arms-length when the product of duress); Raghavendra v. Trustees of Columbia Univ., 686 F. Supp. 2d 332, 344, (S.D.N.Y. Feb. 19, 2010) aff'd in part, vacated in part, remanded 434 Fed. App. 31 (2d Cir. 2011) (same: "the terms of the putative settlement demonstrate that it was the product of an arms-length negotiation, and not duress").

NDG's arrangement with Fischer-Stuhrling is clearly the product of duress. First, NDG, via Mr. Friedman, gave the Products to Fischer-Stuhrling, **during the injunction hearing, on "onerous terms"** (F-S Opp. at 2). Second, NDG took steps to ensure that Vertime, the Court, and even its own counsel did not find out about the transaction.[5] (Friedmann Decl. ¶ 5.) Third, NDG took steps to ensure that Fischer-Stuhrling did not know that the Products were the subject of an ongoing injunction hearing / Injunction.[6] (Id.) NDG's arrangement with Fischer-Stuhrling was born of desperation, not "arms-length negotiations" (NDG Opp. at 2, 4).

C.  **The Facts of this Case Support Appointment of a Receiver.**

Vertime moves for the appointment of a receiver to ensure compliance with the Injunction, and this Court has the authority to appoint a receiver for that purpose:

---

[5] It would be reasonable to infer that Mr. Friedmann did so because if the truth came out at the injunction hearing emergency relief may have been provided (similar to an ex-parte injunction) that would stop NDG from giving the Products to Fischer-Stuhrling.

[6] It would be reasonable to infer that Mr. Friedmann did so because if Fischer-Stuhrling were to learn that the Products were the subject of litigation and/or an injunction, Fischer-Stuhrling would not have agreed to "try to sell it." (See Fischer Dep at 33 & 129 ("It's just not the person I am. I don't like to sell contested goods. I have a reputation to upkeep.").)

> [Where] [t]he more usual remedies contempt proceedings and further injunctions [are] plainly not very promising, as they invite[] further confrontation and delay; and when the usual remedies are inadequate, a court of equity is justified, *particularly in aid of an outstanding injunction*, in turning to less common ones, such as a receivership, to get the job done.

Morgan v. McDonough, 540 F.2d 527, 533 (1st Cir. 1976) (emphasis added); Omaha Indem. Co. v. Wining, 949 F.2d 235, 239 (8th Cir. 1991) (same, citing Morgan); Dixon v. Barry, 967 F. Supp. 535, 550 (D. D.C. June 13, 1997) (citing Morgan: "Pursuant to its equity jurisdiction, a federal court has power to take broad remedial action to effectuate compliance with its orders. This equitable power includes the power to appoint a receiver."); see U.S. v. American Tobacco Co., 221 U.S. 106, 187-88 (1911) (ordering that if parties don't effectuate disintegration of tobacco companies within time allowed, court will appoint receiver to effectuate order); Society for Good Will to Retarded Children, Inv. v.Carey, 466 F. Supp. 722, 727 (E.D.N.Y. Feb. 21, 1979) ("In extreme situations, where defendants have failed to respond to court directive, receivers may be appointed"); Alps South, LLC v. Ohio Willow Wood Company, No. 8:08-cv-1893, 2013 WL 12161867 at *7-*9 & *11 (M.D. Fl. Nov. 12, 2013) (appointing receiver in patent infringement case to ensure compliance with injunction after continued contemptuous sales by sequestering products in warehouse).  Just as in these cases, appointment of a receiver is appropriate in this case to ensure compliance with the Injunction.

NDG's argument against appointment of a receiver misses the point.  (NDG Op. at 5-6.) The case law NDG relies on deals with appointment of a receiver in property ownership disputes. See Varsames v. Palazzolo, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).  This line of cases is not applicable or instructive here.[7]

---

[7] It is ironic that NDG quoted the factors the Varsames court considered, because they describe the facts of this case:
> [F]raudulent conduct on the part of the defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the

Fischer-Stuhrling asserts that a receiver is not necessary because it has agreed to comply with the Court's order. (F-S Opp. at 5.) There is no reason to credit Mr. Fischer's claim that (now that his purported belief that he was not bound by the injunction has been proven wrong) he will abide by the Injunction. There is also no good-faith, rational business reason for Mr. Fischer to suggest that the inventory should remain in his possession. Vertime has not asked that Fischer-Stuhrling pay for the receiver; that burden should be borne by NDG alone. (Mot. at 9-10.) Assuming Fischer-Stuhrling has only good intentions, appointment of a receiver would be less burdensome, as it would free up space in its warehouse.

Leaving the products with Fischer-Stuhrling puts them at risk. Fischer-Stuhrling has produced some but not all of the documents concerning its purchase of the Products. Despite the fact that Fischer-Stuhrling's sales documentation is integral to its "purchase" of the Products[8], it failed or refused to provide such documents to Vertime. Without documentation sufficient to show precisely what Products were delivered to Fischer-Stuhrling, what Vertime Products they sold, and when, there is no way to verify that Fischer-Stuhrling is actually abiding by the injunction. Given that Fischer-Stuhrling is the entity/person through which NDG was putting the Products into the market after the injunction, it would not be prudent to leave the Products in their possession on the assumption that they will now abide by the Injunction.

---

appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property."

Varsames v. Palazzolo, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). This Court already decided several of these factors when it issued the injunction: Vertime has a probability of success on the merits, there is (at least) a possibility of irreparable injury; and legal remedies are inadequate. As discussed above, NDG has engaged in fraudulent activity in its active concealment of its efforts to sell the Products through Fischer-Stuhrling. Finally, NDG's and Fischer-Stuhrling's unabashed sale of the Products despite the Injunction shows that the Products are at great risk if left in their hands.

[8] As discussed below, according to Mr. Fischer, Fischer-Stuhrling's obligations regarding the purported "purchase" are only triggered when it sells the Vertime Products it received from NDG. Therefore, sales documentation concerns Fischer-Stuhrling's purported purchase of the Vertime Products and is within the scope of the subpoenas to Fischer-Stuhrling (Ex. C to A. Frisch Decl. [D.N. 120]).

### D. NDG Should Be Sanctioned No Less Than $745,800 to Disgorge Its Profit from the Contemptuous Sales.

Fischer-Stuhrling, through counsel, represented that it has made payments to NDG in the amount of $745,800. [D.N. 103 at 2.] It was NDG's burden to prove what portion, if any, of this amount was not profit.[9] (See Mot. at 11.) It has not done so. Therefore, this amount plus any further profits proven at the contempt hearing should be disgorged from NDG and awarded to Vertime. The damages sought by would not be a "windfall" as suggested by NDG (NDG Opp. at 7) or "punitive" as argued by Fischer-Stuhrling (F-S Opp. at 11-12). As explained by the Second Circuit in Manhattan Industries, Inc. v. Sweater Bee by Banff, the profit obtained by NDG (and/or Fischer-Stuhrling) from improper sales is the measure of Vertime's compensatory damages under principles of unjust enrichment. 885 F.2d 1, 5-6 (2d Cir. 1989), cert denied, 494 U.S. 1029 (1990). Neither NDG nor Fischer-Stuhrling cite any authority to the contrary.[10]

### E. The Case Law on which NDG Relies Is Inapposite.

NDG asserts that it did not violate the Injunction because the Products were given to Fischer-Stuhrling on June 13 and 14, 2017, prior to the Court granting Vertime's motion for a preliminary injunction on June 15, 2017. (NDG Opp. at 4.) This assertion misses the point.

NDG cites two cases: One11 Imps. Inc. v. Nuop LLC, No. 16-cv-7197 (JPO), 2016 WL 7338422 (S.D.N.Y. Dec. 19, 2016) and Paramount Pictures Corp. v. Carol Publ'g Group, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998). These cases involved plaintiffs who obtained an injunction against a manufacturer of infringing products and then tried to apply it to the manufacturer's sales/distribution chain. One11, 2016 WL 7338422 at *2 ("ONE11 appears to believe that the

---

[9] Vertime notes that NDG cannot do so because NDG failed to pay for approximately 2,500,000 CHF (approximately $2,600,000) of Products accepted from Vertime. (Verified Complaint ¶ 17 [D.N. 28].) Anything NDG obtained from Fischer-Stuhrling was pure profit.

[10] Fischer-Stuhrling relies on Int'l Union v. Bagwell, 512 U.S. 821, 829 (1994), which dealt with fines levied on unions to compel compliance. Bagwell is inapposite. Vertime is seeking compensatory damages, not a fine.

Court's injunction should prevent nonparty retailers from selling infringing goods obtained from NuOp through *past* contractual relationships." (emphasis added)); Paramount, 25 F. Supp. 2d at 373 (enjoined publisher sought "supplemental order clarifying whether the preliminary injunction includes non-party distributors and retailers").

These cases stand for the proposition that "an arm's length transaction involving totally distinct entities and occurring … months prior to the entry of the court's order fail[s] to demonstrate that the nonparty acted in concert with the defendants."  Paramount, 25 F. Supp. 2d at 375.  They are not applicable here.  In this case, the Products sold by Fischer-Stuhrling were not obtained through a "past contractual relationship," they were the subject of an ongoing contractual relationship whereby Fischer-Stuhrling was selling watches in place of NDG.  There is no authority for the proposition that transferring products to a third-party during an injunction hearing, while actively misleading the court about the transfer, and agreeing that the third-party will sell the products after the injunction and remit some of the proceeds to the enjoined defendant, is not active concert or participation.  Clearly it is.

## II.     REPLY TO FISCHER-STUHRLING'S OPPOSITION

### A.     Stuhrling Original, LLC Failed to Respond to Vertime's Motion.

The Opposition filed by Fischer-Stuhrling was filed on behalf of only Chaim Fischer and "Stuhrling Outlet (LLC)": Stuhrling Original, LLC has not responded to NDG's Motion.  (See F-S Opp. at 2 & 13.)  It is unclear whether this is intentional or a mistake, but in either case, Vertime reiterates that the supposed entity "Stuhrling Outlet (LLC)" does not exist (See Ex. D to Mot.), Fischer-Stuhrling has provided no evidence to the contrary, and Vertime's Motion is directed at, among others, Stuhrling Original, LLC (Mot. at 1).

B.    **Fischer-Stuhrling Had Actual Knowledge of the Injunction in January 2018.**

Fischer-Stuhrling claims that it did not have notice of the injunction until approximately March 2018.[11] (F-S Opp. at 7.) This assertion conflicts with Mr. Fischer's deposition testimony, during which he stated that he learned of the injunction from his employee, Samuel Schiff, when Mr. Schiff "got the Subpoenas":

> Q. Without telling me anything further at this point, Mr. Fischer, please tell me who told you about the injunction that you've testified about? Just tell me the name of the person or person, please.
> A. I only found this out when we got – Samuel Schiff got the subpoena.
> Q. Okay. And who told you about the injunction . . . ?
> A. Samuel Schiff.
> Q. Mr. Schiff told you?
> A. Yes.
> Q. What did Mr. Schiff tell you, sir?
> A. That there was some kind of an injunction or something with these goods.
> Q. With what goods, sir?
> A. With some of the goods that we purchased from [NDG].
> Q. And, roughly, when did you learn that from Mr. Schiff?
> A. I don't know the exact dates, but when he got the Subpoenas.

(Fischer Dep. at 12-13.) It is undisputed that Mr. Schiff "got the Subpoenas" in January 2018. (Mot., Ex. E (Affidavit of Service).)

Fischer-Stuhrling had actual notice of the Injunction when Mr. Schiff told Mr. Fischer about it, in January 2018:

> "Actual notice" is defined as knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts. A notice is regarded in law as "actual notice" where the person sought to be charged therewith either knows of the existence of the particular fact in question or is conscious of

---

[11] This admission establishes Fischer-Stuhrling's contempt for all sales of Vertime Products from March 2018 forward.

>having the means of knowing it even though such means may not be employed by him or her."

See Fox v. Lee, No. 9:15-cv-0390 (TJM/CFH), 2018 WL 1187404 (N.D.N.Y. Feb. 2, 2018); John Wiley & Sons, Inc. v. Kirtsaeng, 2009 WL 3003242 (S.D. N.Y. Sep. 15, 2009) ("Actual notice embraces those things that reasonably diligent inquiry and exercise of the means of information at hand would disclose.").

### C. Mr. Fischer's Belief or Intent Is Irrelevant – Fischer-Stuhrling's Actions Are Dispositive.

Fischer-Stuhrling asserts that Mr. Fischer didn't believe the injunction applied to him and that he entered into the deal in his own self-interest, not in an effort to help NDG. See, e.g., F-S Opp. at 3-4. Mr. Fischer's intent in working with NDG and his belief about the injunction are irrelevant: "The rule is directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation." New York State Nat'l Org. for Women v. Terry, 961 F.2d 390, 397 (2d. Cir. 1992) vacated on other grounds sub nom., Pearson v. Planned Parenthood Margaret Sanger Clinic (Manhattan), 507 U.S. 901, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993); see also Eli Lilly & Co. v. Gottstein, 617 F.3d 186, 193 (2d Cir. 2010) (same).

### D. To the Extent any Documentation of Damages Is Presently Lacking, It Is Due to Fischer-Stuhrling's Failure to Comply with the Subpoenas and Will Be Remedied with Subpoenas to Testify and Produce Documents at a Contempt Hearing (or at a Subsequent Hearing in Damages, as Directed by the Court).

Fischer-Stuhrling's assertion that they "provided all of the documentation that was responsive to the subpoenas" is disingenuous. (F-S Opp. at 4.) The subpoenas served on Fischer-Stuhrling required production of documents concerning Fischer-Stuhrling's purchase of Versace, Versus, and Salvatore Ferragamo timepieces from NDG. (Ex. C to Decl. of A. Frisch [D.N. 120].) "Concerning" means: "relating to, referring to, describing, evidencing or constituting." S.D.N.Y. Local R. of Civ. P. 26.3. Fischer-Stuhrling argues that the terms of that

"purchase" were such that payments were only made when watches were sold. (See Mot. at 5; F-S Opp. at 2.) Therefore, Fischer-Stuhrling's records of sales clearly concern the purchase, as they define how much is owed to NDG.

Moreover, Fischer-Stuhrling, through counsel, represented that it has made payments to NDG in the amount of $745,800. [D.N. 103 at 2.] The records of these payments undoubtedly concern Fischer-Stuhrling's purchase of Versace, Versus, and Salvatore Ferragamo timepieces from NDG as they are evidence of Fisher-Stuhrling's side of that portion of the transaction. Nevertheless, Fischer-Stuhrling has failed to provide any sales documentation and has failed to provide the documents related to each of the payments totaling to $745,800. Vertime intends to subpoena Mr. Fischer to testify and produce Fischer-Stuhrling's sales and payment documentation at any contempt or damages hearing to further develop the record on this point.

### E. Fischer-Stuhrling's Claim of an "Arms-Length" Transaction Is Disingenuous.

In addition to the points made in Section I.B., above, Fischer-Stuhrling's claim that its arrangement with NDG was arms-length (F-S Opp. at 9) is belied by Mr. Fischer's admission that he knew Mr. Friedmann (despite never having done business with him) (Decl. of A. Frisch, Ex. A, Fischer Dep. at 16) and Fischer-Stuhrling's reference to Mr. Friedman as "Sammy," which reveals the level of familiarity they have (F-S Opp. at 2, 9).

### III. CONCLUSION

For the foregoing reasons in addition to those in Vertime's original Motion, Vertime respectfully requests that the Court grant the relief requested in Vertime's Motion.

**Respectfully submitted,**

Date:  September 21, 2018          By:    /s/ Todd R. Michaelis (TM6839)
                                                   Ann H. Rubin (*pro hac vice*)
                                                   Todd R. Michaelis (TM6839)
                                                   Carmody Torrance Sandak & Hennessey LLP
                                                   50 Leavenworth Street
                                                   Waterbury, Connecticut 06721
                                                   Tel:  203-573-1200
                                                   Fax:  203-575-2600
                                                   Email: arubin@carmodylaw.com
                                                              tmichaelis@carmodylaw.com

## **CERTIFICATION**

      I hereby certify that on the above date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

                                       /s/ Todd R. Michaelis (TM6839)
                                    Todd R. Michaelis