UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- :
VERTIME B.V.
                               Plaintiff,

                 - against -                       Case No.  7:17-cv-03844-KMK

NEW DOVER GROUP, LTD.
                             Defendant.
-------------------------------------------------------------------- :

## MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION

# Table of Contents

Table of Authorities ................................................................................................................ 3

**I.      INTRODUCTION** ......................................................................................................... 4

**II.     PROCEDURAL BACKGROUND** ............................................................................... 5

**III.    FACTUAL BACKGROUND** ........................................................................................ 6

**IV.    LEGAL ARGUMENT** ................................................................................................ 11

    **1.    Legal Standard** ...................................................................................................... 11

    **2.    The Timing of the Move of the Merchandise** ...................................................... 13

    **3.    The Sale of the Watches was Completed.** ............................................................. 14

    **4.    The Transaction was Entered into in Good Faith by Fischer-Stuhrling** ................... 17

    **5.    Invoice Dates** ......................................................................................................... 18

    **6.    No Sanctions are Warranted** ................................................................................. 19

        **a.    Notice of the Injunction** .................................................................................. 21

        **b.    The Order Violated R. 65** ................................................................................ 22

        **c.    Active Concert or Participation** ...................................................................... 22

        **d.    Stuhrling did not Violate the Injunction** ........................................................ 24

        **e.    Stuhrling has Ceased Sales** ............................................................................. 25

    **7.    Damages** ................................................................................................................. 25

    **8.    A Receiver is not Justified** ..................................................................................... 26

    **9.    The Court Lacks Subject Matter Jurisdiction** ....................................................... 27

**V.     CONCLUSION** ........................................................................................................... 27

# Table of Authorities

**Cases**

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930)......................................................... 23

*California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 28 L. Ed. 1106, 5 S. Ct. 618 (1885)............................................................................................................................................ 12

*City Univ. of NY v Finalco*, 93 AD2d 792, 793 (1st Dept 1983) .................................................. 16

*International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 19 L. Ed. 2d 236, 88 S. Ct. 201 (1967) ........................................................................................... 12

*Int'l Union v. Bagwell*, 512 U.S. 821, 829, 114 S. Ct. 2552, 2558 (1994) ............................. 12, 13

*King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)..................................................... 11

*Latino Officers Ass'n City of N.Y., Inc. v. City of N.Y.*, 558 F.3d 159, 164 (2d Cir. 2009)........... 12

*N.Y. State NOW v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998) ........................................................... 13

*New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996).......................................... 23

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)...................................................................................................................... 11

*Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) ........................ 23

**Statutes**

NY CLS UCC § 2-204 .................................................................................................................... 16

NY UCC §2-606 .............................................................................................................................. 16

**Rules**

Fed. R. Civ. P. 65(d)(1)(C) ........................................................................................................... 22

Fed. R. Civ. P. 65(d)(2)(C) ........................................................................................................... 22

## I.    INTRODUCTION

This memorandum of law is in opposition to the post-bankruptcy renewed motion of the Plaintiff to find that Chaim Fischer and his companies operating under the name Stuhrling (Stuhrling Original LLC and Stuhrling Sales LLC, all shall be referred to herein as "Fischer-Stuhrling" as Plaintiff has designated.  When referring to Mr. Fischer personally, he will be called "Mr. Fischer.") have engaged in contempt of this Court's order of June 15, 2017, directing that the Defendant, New Dover Group not sell certain watches that it had purchased from Plaintiff.  As will be set forth herein, Plaintiff ignores its heavy burden of proof and continues to rely on innuendo and excerpts from the testimony of Mr. Fischer and the Defendant, but has no actual evidence of any improper conduct on behalf of Fischer-Stuhrling.

Despite having numerous opportunities to actually take discovery and gather evidence, including a full day evidentiary hearing on March 5, 2019, the Plaintiff still has no evidence whatsoever of its claimed version of events, and certainly no evidence that Mr. Fischer had knowledge of the Court's injunction until long after the transaction at issue was consummated.  In fact, there is no telling precisely what the Plaintiff believes occurred, as they don't even suggest what it is they are trying to prove, only that Fischer-Stuhrling is somehow culpable because they want it to be true.  As will be demonstrated, Fischer-Stuhrling entered into a transaction with the Defendant without any knowledge of these proceedings and has never knowingly violated an injunction.  Regardless of the Court's opinion of the conduct of the Defendant, these wrongs simply cannot be attributed to Fischer-Stuhrling.

While the Plaintiff really desires for the Court to impute all of the Defendant's acts to Fischer-Stuhrling, particularly the allegedly false or misleading testimony of Defendant's

representatives, there simply is no basis to impute those statements to Fischer-Stuhrling. As the Plaintiff has now stated that its discovery is complete, the factual summary below will set forth Fischer-Stuhrling's version of events as documented by the evidence in the record. In short, for the reasons set forth below Fischer-Stuhrling opposes the motion as to Mr. Fischer and his entities, the collective Fischer-Stuhrling.

## II.    PROCEDURAL BACKGROUND

The Plaintiff's recitation of events, as opposed to the conclusions it draws from those events is largely correct. The action was commenced in the Spring of 2017. Plaintiff sought relief via a preliminary injunction (ECF #34) to prohibit New Dover Group from further selling the watches it had purchased from the Plaintiff. The Court held a fact hearing and entered an order granting the injunction on June 15, 2017. The order was supplemented by an order on consent between the parties on June 23, 2017 (ECF #36).

The action continued between the parties until the Plaintiff began issuing subpoenas to Fischer-Stuhrling, first in January 2018. The initial subpoena was to an Amazon storefront named EvergreenCreations, which was operated by Samuel Schiff, who was working for Mr. Fischer. Mr. Schiff retained the undersigned, and moved to quash the subpoena in a timely motion filed on April 12, 2018 after the Plaintiff served revised subpoenas reflecting certain objections to the breadth of the subpoenas. The Court largely denied the motion to quash, but directed the Plaintiff to enter into a protective order. The protective order was entered on May 3, 2018 and the deposition of Mr. Schiff occurred in May 2018.

Subsequent to the deposition of Mr. Schiff, the Plaintiff determined that it wanted to depose Mr. Fischer, and that deposition was held on June 26, 2018. After that deposition, the Plaintiff began its series of claims that Fischer-Stuhrling was operating in active concert with the Defendant

to evade the injunction. The numerous proceedings on the Plaintiff's applications seeking contempt and sanctions occurred as set forth in the Plaintiff's moving papers. The statement that the initial motion was denied to create a "time out" and to present Plaintiff an opportunity to find additional evidence is Plaintiff's conjecture. The Court's order denying the motion states that discovery was ongoing, and clearly the Plaintiff had not yet been able to meet its evidentiary burden at that point in time.

Further, the statement that Fischer-Stuhrling was non-compliant with its obligations under the subpoenas is simply false, and as Plaintiff now admits, Fischer-Stuhrling has complied with all of its demands. Fischer-Stuhrling made numerous timely objections to the subpoenas, and upon the Court's orders in relation to those applications has complied fully. Similarly, Fischer-Stuhrling has dutifully complied with the Court's injunction since the date it was added to the coverage of the injunction. The watches remain in Fischer-Stuhrling's warehouse, with no end in sight to the Plaintiff's attempts at money grabs and vengeful litigation practices.

Just prior to the due date for opposition to Plaintiff's last motion for sanctions, Defendant filed for bankruptcy protection. This matter was thus stayed pending the outcome of Defendant's bankruptcy. The undersigned filed a notice of appearance in the bankruptcy on behalf of Fischer-Stuhrling, but took no other actions, on the assumption that no recovery was likely to come on any claims held by Fischer-Stuhrling against Defendant.

### III.    FACTUAL BACKGROUND

The Plaintiff presents a large portion of its brief as a section of Factual Background and Procedural History, but it is in reality just argument, and Fischer-Stuhrling responds to those arguments below. Much of the Plaintiff's motion relates to the testimony at the Court's hearing on the preliminary injunction in June 2017. Fischer-Stuhrling, as a non-party, was not present at

those hearings, and takes no position on the veracity of the testimony presented at that time. Whether Defendant hid the fact of the transaction that was ongoing with Fischer-Stuhrling is only relevant, as will be discussed below, in supporting the conclusion that Mr. Fischer was also deceived, as he testified during his deposition and at the hearing in March.  In fact, Samuel Friedmann admitted as much at the hearing as well.  Hr. Tr. 78:15-20; 103:7-25 (the complete hearing transcript is annexed to the Frisch Declaration, Exh. C).  In fact, Friedmann even held back information about the injunction months after the transaction with Fischer-Sturhling.  Hr. Tr. 101:7-25.  Mr. Friedmann stated that "It would not be benefit for me to tell him that" in regard to telling Mr. Fischer about the injunction.  Hr. Tr. 104:10-11.

Mr. Friedmann also stressed that he sold the goods to avoid the injunction, as he was "broke."  Hr. Tr. 109:6-9.  Yet, he did not tell Mr. Fischer about the injunction.  Hr. Tr. 104:13-19.  He realized that telling Mr. Fischer would lead to Mr. Fischer refusing to proceed with the transaction.  Hr. Tr. 177:4-16.  This transaction developed from a conversation started by Mr. Friedmann months before the injunction hearing.  Hr. Tr. 128:2-9; 187:16-18.

Mr. Fischer testified he was not eager to do the transaction, but made an offer that was advantageous to him, which was that he would pay as the goods were sold.  Hr. Tr. 178:8-20.  He also testified that Friedmann agreed to the deal in June 2017, when they were both at a celebration of a recent wedding.  184:20-25.  In fact, Mr. Fischer has even provided a copy of the invitation to that party and Mr. Friedmann has provided evidence of his attendance at the same party.  ECF #151-3.  Mr. Friedmann also recalled that the deal was struck on June 11, the date of the family party.  Hr. Tr. 140:3-7.

It is undisputed that Fischer-Stuhrling sold the products at issue until July 24, 2018, when this Court extended the injunction directly to apply to Fischer-Stuhrling.  It is also undisputed that

no sales have occurred since that date.  While the Plaintiff attempts to cast aspersions on the conduct of Fischer-Stuhrling, they have no factual basis to do so, and simply allege discovery failures and other matters, despite also stating that Fischer-Stuhrling's responses to the subpoenas are in fact complete.  It was Plaintiff that determined that it needed no further discovery and asked the Court to impose a briefing schedule for this motion.

Mr. Fischer testified that he is the owner of a company with 100 employees, including 30 in his warehouse department.  Hr. Tr. 177:23-178:1.  Plaintiff makes numerous references to the fact that Mr. Fischer was not directly involved in the delivery of the goods, and was not especially concerned with the transaction.  As Mr. Fischer testified, he would never have been involved in issues relating to the transport of goods.  Hr. Tr. 177:20-23.  Also, he had limited his downside risk in the deal, he was not concerned with the timing of the delivery.  Hr. Tr. 178:5-20; Fischer Dep. 37:1-16.  Mr. Fischer also testified that this sort of transaction, taking a large number of watches on a handshake deal was normal for him.  Hr. Tr 180:3-16.  Similarly, most of his deals involve taking goods from distributors in some sort of distress, either during a sell-off period at the conclusion of a distributorship or financial hardship.  Hr. Tr. 175:24-176:12.  This deal only differed in that the goods were not of the sort that Fischer-Stuhrling ordinarily sold, which was why Mr. Fischer only promised to pay when they were sold.  Hr. Tr. 178:5-20.

In one bizarre element of the Plaintiff's claims is that the sale between Defendant and Fischer-Stuhrling was not a binding sale because certain terms appear to be in dispute between Defendant and Fischer-Stuhrling as to payment terms.  Pl. Br. at PP. 6-7.  Yet, in reality, Mr. Fischer testified that he expected to pay within the one year term, as he believed Mr. Friedmann that the goods would have been sold.  Hr. Tr. 179:1-6.  It was only when the goods turned out to be difficult to sell that it became apparent that he would not be able to pay during the one year

8

period. Hr. Tr. 179:1-6. As will be set forth below, the transaction is a sale of goods, and governed by the New York Uniform Commercial Code, and clearly was an effective sale, even if there is a dispute as to the deadline for payment. Similarly, Plaintiff declares that since Mr. Friedmann and Mr. Fischer are related that the transaction was a sham and not in good faith. Yet, other than the fact that Mr. Fischer is in fact Mr. Friedmann's brother in law, there is no basis to claim the transaction is a sham. As Mr. Fischer pointed out during the hearing, Plaintiff's counsel never asked if he was related to Mr. Friedmann, even though Mr. Fischer had testified that he had invited Mr. Friedmann to the engagement party of his daughter just days before the deposition Hr. Tr. 153:9-154:5; Fischer Dep. 69:14-70:8. Plaintiff's counsel only asked a yes or no question as to whether Mr. Fischer considered himself a fairly close friend of Mr. Friedmann. Fischer Dep. 132:12-19.

Plaintiff wants to paint Mr. Fischer with the same brush as Mr. Friedmann, but the record does not support Plaintiff's efforts to equate them. Hr. Tr 78:8-22; 101:15-25; 103:7-24; 128:18-23. The reality is that the transaction occurred prior to the entry of the injunction. Plaintiff's motion as against Stuhrling relies on numerous sleights of hand to try to blame Stuhrling for the acts of the Defendant, but as is clear from the Plaintiff's own papers, Stuhrling is entirely blameless and in any event was not subject to the injunction at the time of the purchase.

Thus to summarize, Mr. Fischer completed the transaction on a relatively informal basis, as is customary in the watch business. Hr. Tr. 178:1-20; Fischer Dep. at 115:17-116:6. Mr. Fischer noted that he is offered various packages of watches all the time, including products manufactured by Vertime. Fischer Dep. At 73:23-74:5. He testified that he has completed larger transactions with a handshake as well. Hr. Tr. 174-176; Fischer Dep. at 115:17-116:6. Due to the market being flooded with Vertime goods, Mr. Fischer could not sell them in the quantities he expected. Hr. Tr.

179:7-16. Mr. Fischer hired Samuel Schiff, to post these watches for retail sale on Amazon.com and to otherwise handle the inventory. Hr. Tr. 179:18-21; Fischer Dep. At 124-125; Frisch Exh B (Schiff Deposition). The sales on Amazon were not sufficiently profitable and Mr. Fischer ceased selling them around the time of Passover around April 2018. Hr. Tr. 179:22-180:2. Frisch Exh A. at 72:3-23. In addition, Stuhrling attempted to sell the watches in larger blocks to wholesale buyers or certain online deal websites. Frisch Exh. B at 139.

Mr. Fischer became aware of these proceedings only when his employee Samuel Schiff was subpoenaed. Fischer Dep. at 12:4-13:2. Even at that time, he was not specifically aware of the injunction and did not believe it was directed at him. Hr. Tr. 181:13-23. It was only at some point after Samuel Schiff was subpoenaed by Plaintiff that Mr. Fischer learned of the injunction. Fischer Dep. at 68:18-69:5. Yet, Stuhrling did not view itself as bound by the terms of the injunction, as the watches were purchased before its entry and it was not an affiliate or in any way working with the Defendant, as Mr. Fischer put it "I'm not a party to that injunction. I'm not a party to any of that." Fischer Dep. at 11:3-14; Hr. Tr. 181:22-23. As noted above, the payments being paid after the sales of the goods was not because Stuhrling was acting as the agent of Defendant, but the payment terms that were agreed on by the parties, and Mr. Fischer delayed payments because the goods were not as sellable as represented by Mr. Friedmann.

While Mr. Fischer at the hearing acknowledged that he was not fully familiar with the delivery details of the watches, he also was able to produce documents that substantiated that the delivery occurred as described by Mr. Friedmann. The documents include a printout of an excel spreadsheet and handwritten notes on lined paper that have quantity counts. See ECF #151. In addition, the documents have a handwritten notation that they were received on June 13. So while Mr. Fischer initially thought it was the invoices that had been delivered to Fischer-Stuhrling with

the goods, it was actually the listing of product, and the invoice followed.  Simply put, there is no evidence in the record that the watches were delivered after June 15, 2017.

The fact that the formal invoices were amended numerous times and reached their final form at a later date does not actually demonstrate anything, and is far from a smoking gun.  These documents, which certainly were not in the possession of Fischer-Stuhrling, have no bearing on Mr. Fischer or his companies, and he testified that the deal was made prior to the entry of the injunction and that the delivery occurred soon thereafter.

At this time, Fischer-Stuhrling does not oppose entry of a receiver at the Plaintiff's expense.  Stuhrling strongly opposes any attempt to impose further cost on Fischer-Stuhrling. Fischer-Stuhrling, however, is also willing to hold the watches pending resolution of the issues involved in this and believes that the receivership is an unnecessary expense.

### IV.    LEGAL ARGUMENT

### 1.  Legal Standard

"A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).  Such applications should be granted sparingly.  *See King* 65 F. 3d. at 1058 "In analyzing a contempt order, we recognize that such an order is 'potent weapon,', to which courts should not resort 'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.' Quoting *International Longshoremen's Ass'n v. Philadelphia Marine Trade*

*Ass'n*, 389 U.S. 64, 76, 19 L. Ed. 2d 236, 88 S. Ct. 201 (1967) and *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 28 L. Ed. 1106, 5 S. Ct. 618 (1885).

"A contempt order is warranted only where *the moving party* establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *Latino Officers Ass'n City of N.Y., Inc. v. City of N.Y.*, 558 F.3d 159, 164 (2d Cir. 2009) (emphasis in original) citing King 65 F. 3d. at 1058. It is clearly Vertime's obligation to put forth evidence of a violation of the injunction. As will be shown below, Vertime cannot meet this burden in regard to Stuhrling. Plaintiff makes no attempt to show how its tortured conclusions meet this legal standard. In fact, Vertime fails to demonstrate any evidence of what they believe actually occurred and how it violated the injunction, and how Fischer-Stuhrling was culpable for knowingly violating the injunction, to which it was not subject.

As the damages requested by Plaintiff are unrelated to the actual damages, they are criminal in nature and must be handled in a criminal contempt proceeding. "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Int'l Union v. Bagwell*, 512 U.S. 821, 829, 114 S. Ct. 2552, 2558 (1994). As the Plaintiff is demanding punishment for an alleged past act of disobedience, it is quintessentially criminal in nature. As the Plaintiff is seeking damages for a past event in an amount unrelated to the harm from the non-compliance, this is not a remedy available in the instant proceedings. While the Court has directed that the precise amount of damages be left to subsequent proceedings, the available damages must be limited to actual damages or Stuhrling Fischer is entitled to a criminal trial for the alleged contempt.

As the Court in *Bagwell* stated "or a discrete category of indirect contempts, however, civil procedural protections may be insufficient. Contempts involving out-of-court disobedience to

complex injunctions often require elaborate and reliable factfinding." 512 U.S. at 833-34, 114 S. Ct. at 2560. "Where the contumacious conduct has caused injury to the beneficiary of the court's order, a civil fine may be imposed on the contemnor to compensate the victim for the loss or harm caused by the unlawful conduct. Criminal fines, by contrast, are intended primarily to punish the contemnor and vindicate the authority of the court." *N.Y. State NOW v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998). As the Plaintiff has demonstrated that they are seeking a punitive fine and not just actual damages, the Plaintiff is requesting that the Court impose a criminal sanction, which would of course require the procedural protections attendant to a criminal proceeding, especially proof of guilt beyond a reasonable doubt, something that the Plaintiff cannot begin to claim here.

Stuhrling has complied with all orders of the Court that were directed at Stuhrling, and will continue to do whatever the Court orders, including the transfer of the watches to a receiver, if the Court in fact orders this step. Simply put, there is no need for any additional orders to compel compliance by Stuhrling, which is ready to comply. As such, any remaining relief would be to punish Stuhrling, and such relief is not justified on the record set forth by the Plaintiff. Plaintiff simply fails to address that it ultimately is seeking the imposition of punitive sanctions which constitute criminal contempt, and would require all of the protections of a criminal proceeding. While the Court has determined that it will address damages at a later phase, the Court is limited to sanctions that either prevent further non-compliance, which is not at issue, and restore the Plaintiff to the place it otherwise would have been. As will be demonstrated, Plaintiff has failed to demonstrate any damages whatsoever from the sale of the watches by Fischer-Stuhrling.

## 2. The Timing of the Move of the Merchandise

Plaintiff largely focuses on the question of when the goods were physically moved, and creates questions about the narrative presented by Mr. Friedmann. Plaintiff has presented no

evidence whatsoever that demonstrates that Fischer-Stuhrling was in any way aware of the court proceedings, knew of any rush to move the goods, or had any particular reason to be concerned about the precise date of delivery. For these reasons, Mr. Fischer had no particular reason to record the precise date of delivery. Plaintiff does not have any evidence in fact that the delivery of the goods did not occur on the date stated by Mr. Friedmann.

In fact, Mr. Friedmann testified to certain documentation that was delivered with the goods. The documentation included handwritten notes of quantities, and an excel spreadsheet. Hr. Tr. 69:25-70:3; 72:20-21; 74:13-75:14. Subsequent to the hearing, Fischer-Stuhrling employees scoured the warehouse and located the documents that were delivered with the goods. The documents were provided to the Court on March 15, 2019 as ECF#151. One of the documents was a listing of the watches with photos of the watch models and details of each. The document was hand marked with a notation that stated "received 6/13." Plaintiff declined the Court's invitation to engage in further discovery, but has no basis to contradict the sworn testimony of the parties.

Plaintiff largely has one piece of evidence in its favor, certain Quickbooks audit trails that were produced by Defendant after the March 5 hearing. The audit trails demonstrate only that the invoices were edited on numerous occasions before taking their final form. In any event, the parties to the transaction, Fischer-Stuhrling and the Defendant agree that the transaction took place on June 11, 2017, with the delivery occurring within the next few days. Fischer-Stuhrling was not concerned with the precise date of delivery, so that was not a material term of the parties' agreement, but the evidence demonstrates that the transaction occurred on June 11, 2017 and the watches were delivered within the next few days prior to the entry of the injunction.

**3. The Sale of the Watches was Completed.**

14

Plaintiff bizarrely argues that the sale of the watches was not completed due to a possible disagreement on the precise payment terms as reflected in the hearing testimony of Mr. Fischer and Mr. Friedmann.  First, Mr. Fischer admitted that he eventually agreed to the one year term, as he expected to be able to sell the watches in that time.

> 21 Q. What precisely were the terms of the deal, in your
> 22 recollection?
> 23 A. Mr. Friedmann asked me to commit to -- first, the --
> 24 first, the deal was, you know, pay him upfront; then I said,
> 25 "Of course, that I could not do." After a while, Mr.
> 1 Friedmann asked me to pay -- to make sure that we should pay
> 2 within the year. I thought that I would have no problem
> 3 selling the products. I thought they were decent products and
> 4 I could probably sell them; although, when I started selling
> 5 them, I found out that that wasn't the case, and my
> 6 anticipation was to pay as soon as I possibly can.
> 
> Hr. Tr. at 178-179.

As this was in accordance with Mr. Friedmann's testimony, Hr. Tr. at 77:6-12; 128:10-14 "It was 12 months, and if he's gonna sell it before, he's gonna pay me before," Plaintiff's entire discussion misses the point.  Furthermore, even the portion of the transcript that they quoted from Mr. Fischer states that "Q. Did you ever agree to that? A. I tried not to."  Hr. Tr. at 173:22-174:3

However, the New York Uniform Commercial Code governed the transaction, and makes it clear that even if the parties dispute some terms of the contract, a contract is in fact formed when the evidence demonstrates that the parties intended a contract to be formed.

> (1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
> (2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

> (3) Even though one or more terms are left open a contract
> for sale does not fail for indefiniteness if the parties have
> intended to make a contract and there is a reasonably certain
> basis for giving an appropriate remedy."

NY CLS UCC § 2-204.  The first prong is clearly met, as Defendant delivered the goods to Fischer-Stuhrling, and set forth a purchase price that was agreed upon on their invoices.  Fischer-Stuhrling in fact paid approximately $750,000 toward the transaction.  The parties both agree the deal was finalized at the family Sheva Brachot party on June 11, 2017 in a verbal deal, but even if the moment is not certain, the parties clearly agreed to a deal.  Item 3 is the one that Plaintiff appears to be relying upon, yet there is clearly an appropriate remedy to the dispute about the timing of the payments.  A court of competent jurisdiction could order the payment to be made on the date reflected on the invoices or could give relief to Fischer-Stuhrling on the basis that the goods were not as described by Friedmann and thus were not sellable within the promised timeframe (both due to the reality of the marketplace discussed by Mr. Fischer and this action).  In any event, those issues are not before the Court on Plaintiff's motion.

"Under the Uniform Commercial Code, where the parties intend to enter into a binding commitment, a contract of sale will not fail for indefiniteness, albeit there may exist a dispute as to material terms." *City Univ. of NY v Finalco*, 93 AD2d 792, 793 (1st Dept 1983).  Plaintiff has not cited any caselaw that would state that a disagreement as to the timing of a payment would defeat the parties' intent to form a contract.  This is particularly true when it is a situation where the goods were delivered and accepted in accordance with NY UCC §2-606.

It is clear that the parties intended a contract to be formed, and that one was in fact formed. The goods were delivered and partial payments were made.  While Defendant may believe that further payments were due, that is not sufficient cause to state that the transaction did not occur.

That Plaintiff is unhappy with this fact, does not change it.  As such, Plaintiff's argument that the actions of Fischer-Stuhrling were simply as an agent of Defendant, is simply without any merit.

Even if the Plaintiff was correct that the goods were physically delivered later, it would not change the fact that the transaction had already occurred in June 2017, prior to the entry of the injunction.  That the Plaintiff fails to supply a single piece of evidence as to the delivery of the watches, just further undermines its claim.

### 4. The Transaction was Entered into in Good Faith by Fischer-Stuhrling

As Plaintiff notes, Mr. Fischer and Mr. Friedmann are related, as they are brothers in law. This fact does not mean that Mr. Fischer entered into the transaction in bad faith, as is baldly alleged by the Plaintiff.  Plaintiff emphasizes that Mr. Friedmann misled Mr. Fischer, according to his own testimony.  By his own admission, Mr. Friedmann hid the issues from Mr. Fischer so that he could salvage something prior to the entry of the injunction.  *e.g.* Hr. Tr. 109:1-11.  As the Court itself wondered during the hearing, this conduct was most definitely unfair to Mr. Fischer. Hr. Tr. 141:19-23. As Mr. Fischer noted, he would not have undertaken this transaction had he been aware of the ongoing proceedings.  Hr. Tr. 180:23-25.  Ultimately, he runs his business on his own personal reputation, and dealing in these goods has only damaged that reputation.  Hr. Tr. 182:1-12.

As Mr. Fischer understood that he was going to pay as he sold the goods, though he expected that to be in approximately one year, he was not especially concerned with the details of the transaction.  This transaction was not tremendously different that most of his other transactions in which he takes goods from somewhat distressed sellers and uses his global platform to sell them at a profit.  Mr. Fischer does not get involved in the nitty gritty of any of his deals.  Once the deal was completed, and Fischer-Stuhrling recognized that the goods would be harder to sell than had

been represented by Friedmann, they asked to adjust the timing of payments on the invoices. The Defendant agreed to some modifications, and then the injunction prevented Fischer-Stuhrling from selling further goods, which resulted in the payments being terminated.

Plaintiff asks the Court to take an inference from the fact that Mr. Fischer, who runs a business with over 100 employees, was unaware of the shipping and invoicing details for this transaction. Yet, it is Plaintiff's burden to demonstrate that a contempt occurred with clear and convincing evidence, and it is Plaintiff that failed to take any further discovery after Mr. Fischer testified that he had no knowledge of these matters. Plaintiff failed to elicit testimony from Mel Moskowitz, who was the individual who was handling payments on behalf of Fischer-Stuhrling after the transaction occurred. Plaintiff failed to seek any testimony from any employees of the Defendant or from Stuhrling's warehouse. They simply expect Mr. Fischer to be involved in details that he testified that he simply does not involve himself in.

Plaintiff's argument fails to set forth the details of what they actually believe occurred, and the evidence supporting that narrative. This is the Plaintiff's burden, and in that Plaintiff fails miserably.

### 5. Invoice Dates

Despite the production of the detailed documents that were delivered with the watches, Plaintiff relies on one statement at Mr. Fischer's deposition, which is that he assumed the invoices were delivered on the dates that they had printed on them. As it turns out, those invoices were delivered later. Mr. Fischer's testimony was clearly based on his assumption that the goods were accompanied by the invoice. Fischer Dep. Tr. 53:5-14. Plaintiff even notes that this testimony was just an assumption and not based on actual knowledge. As it turns out, the goods were

delivered with the lists of the product, as they were described by Friedmann, and the invoices were delivered later.

As Plaintiff so ably notes, it has no evidence whatsoever that the watches were delivered later than the dates inputted on the invoices. So, while Plaintiff is correct that the invoices reflect dates that are not tied to the date that the final invoice was prepared (although the invoices appear to have been prepared in late June as Mr. Friedmann testified, with minor changes until they took their final form in August), they have failed to provide any evidence that the goods were delivered after the injunction was entered. Again, it must be noted that it is Plaintiff's burden to demonstrate by clear and convincing evidence that the transaction was a violation of the injunction, and that Fischer-Stuhrling in fact violated the injunction. They simply cannot come close to meeting that burden with the evidence at hand. Furthermore, as the parties to the transaction admitted that no payment would be due for a year, there was no urgency in preparing final invoices, so a one or two month delay in finalizing invoices was of no moment.

## 6. No Sanctions are Warranted

Plaintiff relies largely on the statements of Friedmann that Plaintiff has interpreted as Mr. Friedmann attempting to hide the transaction from Vertime and the Court. As was clear at the hearing, Fischer-Stuhrling is a third-party that unwittingly entered a problematic deal with incomplete information, and not a willing participant in active concert with the Defendant. Mr. Fischer had no reason to suspect that the Defendant was dumping the goods to avoid an injunction, as he was not aware of the proceedings, was not aware that it was a rushed transaction, and it was not uncommon for him to take goods at favorable terms from a distributor losing a distributorship. Even if the Court determined that Friedmann violated the injunction, he was manipulating Mr.

Fischer to do so. As was clear at the hearing, Fischer-Stuhrling is a victim of Mr. Friedmann's desperation, and not a willing participant in active concert with the Defendant.

The Plaintiff is so focused on the timing of the transaction because they know that if the transaction occurred prior to the entry of the injunction, then they have no claim for contempt. Fischer-Stuhrling is an innocent third party. In reality, the timing is not significant because Mr. Fischer was not aware of the injunction and did not willingly violate any court order.

Plaintiff fails to even attempt to demonstrate why Fischer-Stuhrling should be sanctioned. The one paragraph argument in regard to Fischer-Stuhrling's supposed non-compliance with the injunction focuses on when Mr. Fischer found out about this action and the injunction, but not why Mr. Fischer would be bound by it if he purchased the goods prior to its entry, unaware of Mr. Friedmann's need to avoid the Court's orders, and simply went about his business. Of course, Plaintiff cannot even meet its heavy burden to demonstrate that the injunction was in fact violated by anyone, and cannot show that Fischer-Stuhrling violated the injunction.

The assertion that Fischer-Stuhrling somehow became a party to the injunction when it became aware of it, is without any legal basis. Aside from the fact that the Plaintiff is simply assuming that the transaction occurred in August 2017 (and had provided no evidence whatsoever to support that conclusion), it simply has no evidence that Mr. Fischer was a willing participant in evading the injunction. The injunction, as entered in June 2017, enjoined the Defendant from selling the goods. Fischer-Stuhrling had already purchased the goods, and was unaware of the injunction. Thus, becoming aware of the fact that an injunction had been entered did not serve to make Mr. Fischer and his companies responsible to comply with an injunction directed at another party.

When reviewing the factors for entering a contempt order, Plaintiff's motion must fail. First, the initial order did not clearly apply to Stuhrling. Stuhrling was already the owner of the goods on the day it was entered. Stuhrling is not an affiliate of the Defendant and was not mentioned in the order. Stuhrling did not have any knowledge of this action for months after it purchased the goods. As the Court felt it necessary to revise the injunction to include Stuhrling, there is no basis to conclude that the original order included the non-party Stuhrling. More significantly, the clear and convincing evidence standard simply cannot be met on these facts.

### a. Notice of the Injunction

In addition, Stuhrling did not have notice of the injunction until approximately March 2018, when Stuhrling retained counsel. There is no evidence that the injunction was provided to Stuhrling prior to that date or that any party claimed that Stuhrling's sales of the watches were in violation of the injunction. At no time prior to the deposition of Mr. Fischer did Plaintiff make any claim that the injunction should apply to the activities of Stuhrling and Stuhrling had no reason to assume that it did.

Plaintiff makes a claim that Mr. Fischer was aware of the injunction from the date of the subpoena to Samuel Schiff. Aside from the fact that his testimony is unclear as to when he learned it is clear that he never viewed it as applicable to his company. In addition, Plaintiff never notified Mr. Schiff or Mr. Fischer that they believed the injunction applied or demanded that Stuhrling cease sales of the products purchased from NDG. It was only after the June 26 deposition that the Plaintiff made the claim that the injunction applied to Stuhrling, and began seeking the injunction of Stuhrling's sales. Stuhrling believes that the injunction was wrongly applied to it, but has complied since the Court extended it to its operations in July 2018.

A third party without notice of the injunction cannot be penalized for violating the order. "civil contempt sanctions may be assessed against nonparties who had actual notice of the order in effect at the time in question and who acted in concert with defendants in violating the order." *New York State NOW v. Terry*, 952 F. Supp. 1033 at HN3 (S.D.N.Y. 1997). Plaintiff cannot state with any certainty when Mr. Fischer became aware of the injunction, and that lack of certainty is clear from the Plaintiff's own papers, which vary from demanding sanctions from January or from June.

### b. The Order Violated R. 65

The fact that the injunction order referred back to the parties' contract is in direct contravention of Fed. R. Civ. P. 65(d)(1)(C), which states that the order must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." The order specifically defined the items prohibited from being sold by reference to a contract that was not attached to the order. This violation is more significant here in regards to Stuhrling, as they were not in possession of the contract it referenced, even if they did have a copy of the order, which they did not.

Plaintiff drafted the injunction order and should not be able to benefit from its clear violation of the requirements of Rule 65.

### c. Active Concert or Participation

The blanket assertion that Stuhrling was acting "in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)," Fed. R. Civ. P. 65(d)(2)(C), is simply without merit. The testimony is clear that Stuhrling engaged in an arms-length transaction to purchase the goods on favorable terms, which included credit until the goods had sold. At no time was NDG entitled to the return of the goods or any share of the profit. See e.g. Frisch Exh A at 113. They were

simply entitled to payments of their invoices over time as the goods were sold.  All risk and reward attributable to the ownership of the package of watches belonged to Stuhrling from June 14, 2017. There is no evidence in the record to the contrary, and as such, the Plaintiff's motion fails to meet the Plaintiff's exacting burden of proof.

Plaintiff makes no effort to recite the cases that define "active concert" or to analyze whether Stuhrling falls into that category.  "a court 'cannot lawfully enjoin the world at large.'" *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930).  "Whether one not named in an injunctive decree may nevertheless be bound by it depends on the facts of each case."  *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) (internal quotation omitted).

The *Alemite* Court set forth that a "a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt." 42 F.2d at 832.  "the respondent must either abet the defendant, or must be legally identified with him." Id., 42 F.2d at  833.  It is clear from the record that Stuhrling and the Defendant are not legally identifiable entities.  Stuhrling has no business relationship with the Defendant other than this transaction.  It is in no way affiliated with that business or any other business owned by Samuel Friedman.  Plaintiff also cannot meet its burden of proof in claiming that Stuhrling knowingly assisted the Defendant in violating the injunction.  The only evidence in the record is that Stuhrling purchased the goods prior to entry of the injunction on an arm's length basis.  Plaintiff may will it otherwise, but they cannot meet their burden of proof on this issue.

Plaintiff has set forth a story that the goods were sold after the injunction was entered, but has presented zero evidence of that.  Similarly, Plaintiff presents zero evidence that Mr. Fischer was aware of the lawsuit, the injunction or any dispute between Vertime and New Dover Group at

the time the purchase was made.  Both Mr. Friedmann and Mr. Fischer testified that the transaction was first proposed months earlier, that Friedmann was not ready to acquiesce to Mr. Fischer's terms, and that eventually they agreed on the deal at a party on June 11, 2017.  Both Friedmann and Mr. Fischer provided proof of the existence of the party.  Mr. Fischer entered the deal without knowledge of these proceedings, according to Friedmann's own admissions during the hearing.

### d.  Stuhrling did not Violate the Injunction

Furthermore, Stuhrling never failed to comply with the injunction.  They purchased watches from Defendant prior to the entry of the injunction.  Plaintiff could have sought a temporary restraining order, but chose strategically not to do so.  The purchase by Stuhrling prior to the entry of the injunction by definition was not subject to the injunction entered subsequently. Plaintiff is seeking to retroactively modify the application into one for a temporary restraining order, but should not be permitted to do so.  Stuhrling sold the watches unaware of the injunction for months, and never understood the injunction to apply to their sales, as they were not mentioned in the order.  Plaintiff argues that Stuhrling was acting in concert with NDG, as discussed above, but there is no evidence of that assertion, other than Plaintiff's self-serving say so.  There is simply no evidence of any "active concert" or participation, just payments on the outstanding invoices. Stuhrling paid for goods it purchased on the terms that were agreed between the parties to the transaction.  While Plaintiff wants to cast aspersions on the transaction, they have set forth no evidence that the transaction is not as described by Mr. Fischer.

Because of the fact that the foregoing is self-evident, the Plaintiff is focused on its claim that the goods were transferred later than Friedmann and Fischer-Stuhrling claim.  Plaintiff has no evidence other than its own assumption that Mr. Fischer and Mr. Friedmann are lying. Yet, they failed to present a single piece of direct evidence demonstrating that either Friedmann or Mr.

Fischer lied.  Instead, they rely on innuendo rather than evidence.  Plaintiff decided not to seek the depositions of any of the warehouse staff or others who were involved in the movement of the watches.  Plaintiff is not entitled to just assume that those witnesses would have supported its arguments.  In fact, the Court invited Plaintiff to engage in more fact finding prior to filing this motion, and Plaintiff determined that it was not necessary.  As such, Plaintiff is left with no evidence whatsoever supporting its claims.

### e.  Stuhrling has Ceased Sales

Stuhrling took down retail sales on Amazon by April 2018, and subsequently stopped selling larger lots as well.  Upon the Court's order that the injunction fully applied to Stuhrling, Stuhrling ceased all sales of the Vertime Products.  As such, the third prong of the analysis also works in Stuhrling's favor, as Stuhrling acted to avoid selling goods once it became clear that the Court was enjoining its sales.

### 7.  Damages

Plaintiff seeks punitive sanctions that are not intended to be compensatory, at least as far as Stuhrling is concerned.  As such, these sanctions may only be imposed via a charge of criminal contempt.

Plaintiff's claim that it was damaged by a sale of the enjoined products, in that the watches may have been purchased from its new distributor, is misleading.  The fact is that Vertime sold these goods, and it has no damages from the fact that those watches have been sold.  That was always the expectation, and Vertime has already earned its profits from those sales.  Furthermore, Stuhrling's supposed profits bear no relationship to Vertime's supposed loss, which is lost sales to its new distributor.  Plaintiff must demonstrate some actual loss of sales to its new distributor, which it is unable to do.  In fact, Plaintiff has not even provided the Court with any evidence that

these watches are still manufactured or that its current distributor, Madeluxe, had any need to purchase these watches.

As set forth in the Declaration of Chaim Fischer, annexed to the original opposition ECF #121, Stuhrling has made no profits on its sales of these goods through the sales prior to the entry of the revised injunction. As Stuhrling paid for the goods and had marketing and storage expenses, there was no profit to date from the sale of the watches by Stuhrling. As Stuhrling is now prohibited from selling these goods, there is little hope that Stuhrling will ever make any profit either. As such, it is clear that Plaintiff's bizarre attempt at a money grab is in no way tied to actual damages or even Stuhrling's actions. It is simply Plaintiff's attempt to be punitive, despite the fact that there is no factual basis for a punitive sanction.

The Plaintiff has set forth no basis for its damage claim and in any event, the amount is hotly disputed. Plaintiff cites one case from the Second Circuit that predates *Bagwell* and allows for an unjust enrichment theory of damages in a trademark case. In this instance there is no basis to claim unjust enrichment from Stuhrling, who purchased the goods prior to entry of the injunction and was not in any way harming Plaintiff by its sales of the goods, which were always intended to be sold. The sale of the goods in a trademark dispute itself is damaging to the holder of the trademark, but that is not relevant in this contract dispute.

Plaintiff is also seeking an award of legal fees, and acknowledges that attorney's fees are generally unavailable except in the case of a willful violation. It is clear that Plaintiff fails to demonstrate any willfulness on the part of Stuhrling. Furthermore, even if the court were to determine that NDG acted willfully, Stuhrling clearly did not, and an award of legal fees against Stuhrling that was joint and several would be unjust.

**8. A Receiver is not Justified**

It is uncontested that the watches have remained secured in Stuhrling's warehouse since the injunction was extended to Stuhrling explicitly, and no watches have been sold or otherwise removed.  By attempting to group Fischer-Stuhrling with NDG, Plaintiff states that they have blatantly disregarded the injunction.  Yet, in almost 4 years, no watches have been removed.  There simply is no cause for the Court to force anyone to bear the expense of a receivership at this point in time.  This is made stronger by the passage of time through the bankruptcy process, with not a single allegation of misconduct over several years.

**9.  The Court Lacks Subject Matter Jurisdiction**

Fischer-Stuhrling incorporates by reference the arguments of Defendant in regard to the Court's lack of continuing subject matter jurisdiction in this matter.

## V.    CONCLUSION

 For these reasons, the third parties, Chaim Fischer and the Stuhrling entities respectfully request that the Court deny the motion for contempt and sanctions.

Dated: September 20, 2022

/s/ Avram E. Frisch
Avram E. Frisch
