UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VERTIME B.V.,<br><br>    Plaintiff,<br><br>  v.<br><br>NEW DOVER GROUP, LTD.,<br><br>    Defendant. | Civil Action No. 7:17-CV-03844(KMK)<br><br>**DECLARATION OF**<br>**SAMUEL FRIEDMANN** |

I, Samuel Friedmann, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I was formerly the President of Defendant New Dover Group, Ltd. ("NDG").

2. I submit this declaration, on behalf of myself and NDG, in support of NDG's opposition to Plaintiff Vertime B.V.'s ("Vertime") renewed motion for contempt, sanctions, and to appoint a receiver (the "Motion"). I am not a party to this action, nor a respondent to the Motion.

3. In particular, I make this declaration, on the basis of my direct personal knowledge, in order to ensure that an accurate factual picture is before the Court in considering the Motion.

4. Regrettably, due in part to inartful statements on my part in earlier proceedings, there are numerous factual claims in the record that require correction. I am not used to testifying in person, English is not my first language (nor in fact my second, or third), and the events in question took place years ago, making recollection more difficult. To the extent any misunderstandings in the record are the result of mistakes or omissions on my part, I sincerely apologize to the Court and hope to rectify those issues now.

### I. New Dover Group, Ltd. is Defunct

5. As an initial matter, I feel obligated to bring to the Court's attention that NDG is defunct and no longer exists as a commercial entity. Because I was the president of NDG until it ceased to do business, I am the person most familiar with NDG's current status.

6. As Vertime has advised the Court, on May 31, 2022, NDG completed Chapter 7 bankruptcy proceedings, liquidating its assets to pay creditors. *See In re New Dover Group, Ltd.*, No. 19-23266-RDD (Bankr. S.D.N.Y.).

7. NDG has been defunct since at least December 11, 2020, since M&T Bank sold off certain assets formerly belonging to NDG. Since then, NDG has not transacted any business. NDG has not employed any person since November 2018, so there are no individuals through whom it can operate. Nor does NDG have any other of the hallmarks of a functional company, such as premises of its own; active corporate officers; or accounts and other assets (aside from its legal interest in the watches at issue).

8. NDG's defunct status is corroborated by the results reached by its former bankruptcy trustee, Mark Tulis of Tulis Wilkes Huff & Geiger LLP (the "Trustee"). The Trustee was only able to administer a single, abstract asset during the bankruptcy: arbitral counterclaims against Vertime, which Vertime bought out for $126,500. *See* Trustee's Final Report, *In re New Dover Group, Ltd.*, No. 19-23266-RDD, Dkt. 89 (Bankr. S.D.N.Y. Nov. 10, 2021). The only other assets the Trustee identified were a checking account worth $988.79, and watches worth $983,395.50, which the Trustee abandoned. *See* Chapter 7 Trustee's Final Account and Distribution Report Certification, *id.*, Dkt. 94 (Bankr. S.D.N.Y. May 24, 2022). In short, the results of the bankruptcy only confirm that NDG is not a going concern.

- 3 -

9. I also advised the Court in a November 2018 declaration that core assets of NDG were being sold to satisfy a claim by M&T Bank. Specifically, NDG's "accounts receivables, inventory of watches and watch parts (excluding the Vertime Products), fixed assets, trademarks, and computer software" were to be sold off. *See* Dkt. 138 at ¶ 6.

10. M&T Bank was ultimately able to liquidate watches, warranty cards, and packaging materials, *i.e.*, NDG assets subject to its claims and abandoned by the Trustee, via a UCC sale on December 11, 2020. This sale of basic company property, several years ago, is further indicative of NDG's defunct status.

11. Not only is NDG defunct currently, it will remain so permanently. I have no intention of reconstituting it as an active business in the future, and no other person is in a position to do so.

12. Although NDG is currently registered as Active with the New York Department of State, this is an administrative oversight, and is misleading as to NDG's true status. Indeed, the Department of State's own records also reflect that biennial statements for NDG have not been filed since February 2016, further showing that the entity is not in fact active.

**II.     The Premise of the Motion is False, because the Watches at Issue were Transferred to Fischer-Stuhrling before the Preliminary Injunction was Entered**

13.     The key premise of the Motion is the incorrect claim that NDG transferred watches to Chaim Fischer ("Fischer") and/or his companies Stuhrling Original, LLC and Stuhrling Outlet (together with Fischer, "Fischer-Stuhrling") *after* this Court verbally entered a preliminary injunction on June 15, 2017 which prohibited such a transfer, later memorialized at Dkt. 36 (the "Preliminary Injunction").  I respectfully testify that this is not true.

14.     As others later testified, I was anxiously trying to sell the watches.  On June 11, 2017, I made a handshake deal for the sale of the watches at issue with Fischer, who is my brother-in-law, at a family function that we both attended, following a family wedding.

15.     Prior to making the deal, I had conferred with counsel.  I believed I was acting within my legal rights in executing the deal.  I had no intention of violating a court order: I understood it to be lawful to sell the watches to Fischer-Stuhrling because such an order was not yet in place.  My intention was to realize some income from the sale of the watches – albeit at a substantial loss, as I was in a difficult bargaining position – while I still could; I did not (and do not) intend any disrespect to the Court.

16.     On June 12 or 13, I directed NDG's employees, particularly its shipping department, to transfer the watches to Fischer-Stuhrling as soon as possible.  I do not recall the exact date, but I know it was immediately after I made the handshake agreement with Fischer.

17.     However, while I instructed that the watches be immediately delivered and, as I have previously testified, my employees reported to me that the watches were delivered on June 13 and 14, I have no direct personal knowledge of how the watches were transferred from NDG to Fischer.  I considered delivery to be a ministerial function, since the deal had been made and I had given instructions to the shipping department to see it through.  I was out of the office after

June 11 – although not yet in Europe, as stated below – and I did not personally oversee the transfer; consequently, I cannot testify to the details of how it was done.

18. I recognize that in my testimony before the Court on March 5, 2019, when questioned, I attempted to answer regarding the transfer of the watches to the best of my awareness (although I repeatedly stated that I was limited in my ability to answer). For instance, I stated that my understanding was that the watches were transported by car. However, in doing so I inadvertently went beyond the limits of the facts with which I am directly and personally familiar. Because I was not in the office after June 11, and did not personally oversee or participate in the transfer, I cannot claim direct familiarity with how it was carried out.

19. To be clear, I am not aware of any sales or deliveries of watches from NDG that were carried out *after* the Court entered a preliminary injunction on June 15.

20. As documents produced to Vertime show, I traveled overseas between June 18 and June 23, 2017. This was a separate trip from my being out of office after June 11, and I apologize for any confusion about the dates of my travel created by my prior testimony.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on September 19, 2022.

_____
SAMUEL FRIEDMANN