UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VERTIME B.V., <br><br> Plaintiff, <br><br> v. <br><br> NEW DOVER GROUP, LTD., <br><br> Defendant. | Civil Action No. 7:17-CV-03844(KMK) <br><br> **DECLARATION OF** <br> **SAMUEL FRIEDMANN** |

I, Samuel Friedmann, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. As the Court is aware from my prior declarations in this matter (*see* Dkt. 123, 138, 189), I was formerly the president of Defendant New Dover Group, Ltd. ("NDG"). I submit this declaration on behalf of NDG, as part of NDG's response and opposition to the Statement of Damages filed by plaintiff Vertime B.V. ("Vertime") in connection with its pending motion for contempt (the "Motion").

2. All allegations herein are based on my personal knowledge, except those indicated as being alleged upon information and belief, and as to those I am informed and have a reasonable, good-faith belief in the accuracy and truthfulness of those statements.

3. I am not a party to this action, nor am I a respondent on the Motion. I make this declaration to put facts before the Court that relate to Vertime's request for sanctions and other remedies.

4. Above all, I emphasize that: (1) NDG acted at all relevant times in good faith, in the genuine belief that it was acting within its rights under the law and not contrary to this Court's orders; and (2) NDG has not sold any watches subject to the Injunction after the Injunction was entered. I also reiterate and stand by my prior declarations in full, particularly my Sept. 20, 2022

declaration in opposition to the Motion, as that declaration made a point of clarifying ambiguities and mistakes in past testimony.

5. NDG paid Vertime millions of dollars to acquire the watches that it sold to Fischer-Stuhrling via my oral agreement with Chaim Fischer on June 11, 2017 (the "Products"). This is far more than NDG or any affiliated company has received back from Fischer-Stuhrling in payment for the June 11, 2017 sale. NDG has not made any profit on those watches.

6. Given the difficulty in tracing the movement of the roughly 50,000 watches at issue, at this time I am not aware of the precise figure for exactly how much NDG paid Vertime for those specific watches. However, two other data points corroborate the fact that NDG paid Vertime millions of dollars.

7. First, as the invoices documenting NDG's sale of Products to Fischer-Stuhrling show, the watches carried a total value of over $5.3 million. Invoice #191089096 was for $3,362,050.55; invoice #191092814 was for $72,903.75; and #191093015 was for $1,940,166.10. *See* Dkt. 193-1 at 173-298 (Exhibits F through H from the March 5, 2019 hearing on Vertime's prior contempt motion).

8. Second, in the last two years of NDG's relationship with Vertime, the following amounts were paid to Vertime, by NDG or by other companies affiliated with me on NDG's behalf. All of these payments should have been applied to Vertime's receivables from NDG; to the extent they have not been, Vertime is improperly padding its claim. True and correct copies of payment information evidencing these payments is enclosed herewith as **Exhibits A, B, and C**.

    a. 6,427,252.64 CHF (Swiss francs) from NDG;

    b. 3,543,452.50 CHF from First SBF Holding Inc.; and

      c.   1,937,529.95 from AOB Holding Inc.[1]

9.    By contrast, after NDG sold the Products to Fischer-Stuhrling on June 11, 2017, Fischer-Stuhrling remitted a total of $745,800 between October 19, 2017 and March 27, 2018. *See* Dkt. 193-1 at 300 (Exhibit I to Mar. 5, 2019 hearing). As that exhibit shows, Fischer-Stuhrling made these payments to First SBF Holding Inc., not NDG, and they represent the only revenue any entity associated with me has received for the Products. Thus, NDG has not generated any profits from the Products: they represent a net loss of millions of dollars.

10.    NDG does not possess the $745,800 received from Fischer-Stuhrling. As Fischer-Stuhrling's record shows, the payments were addressed to First SBF Holding Inc. in the first instance, and the money has long since been used to pay creditors.

11.    I understand that Vertime has suggested in the Motion that NDG, at least in the abstract, has a claim against Fischer-Stuhrling for payment of the remaining purchase price for the Products. As I stated in my September 20, 2022 declaration, however, NDG is completely defunct without any employees, assets, or ongoing operations, and has no ability to pursue such a claim, if any claim exists. Nor do I intend to revive NDG, in connection with such a claim or otherwise. *See* Dkt. 198 at ¶ 5-11.

12.    I am aware that Vertime has also claimed that NDG has not paid all invoices associated with the Products, arguing that any watches for which NDG did not pay represent pure profit. *See* Dkt. 198 at 1 n.1. This is misleading.

13.    First, as already noted, nothing about the Products represents profit for NDG: NDG paid millions of dollars to acquire the Products, and Fischer-Stuhrling remitted only $745,800 back

---

[1] Public sources indicate that the exchange rate between Swiss francs and U.S. dollars has ranged between .97 and 1.27 dollars per franc over the past ten years. *See* https://www.xe.com/currencycharts/?from=CHF&to=USD&view=10Y. Thus, these payments represent millions of dollars in value paid to Vertime.

to First SBF Holding Inc. NDG has since gone through bankruptcy and is defunct with no assets. To suggest NDG has received some kind of windfall is absurd.

14. Second, NDG did not directly pay the final invoice issued by Vertime in the parties' relationship prior to December 31, 2016, which represents only a portion of the Products' value. Moreover, the reason NDG did not pay this final invoice was because of obligations Vertime owed to NDG, including (for instance) approximately $500,000 that NDG spent on advertising in reliance on Vertime's false assurances that the relationship would be renewed. In other words, NDG's nonpayment was justified, and does not represent NDG simply getting watches for free, such that any subsequent revenue would be pure profit. Further, upon information and belief, Vertime has failed to apply payments made to it by other entities on NDG's behalf, artificially increasing any obligation owed by NDG.

15. Upon information and belief, Vertime has also been compensated by insurance for amounts Vertime alleges it is due from NDG. In other words, not only has Vertime been paid millions of dollars for the Products, I believe Vertime has likely been made whole for any losses by insurance.

16. I am aware that Vertime argued in the motion that a specific document, which was Exhibit C at the March 5, 2019 hearing, is evidence that NDG conducted sales of Products after the Injunction was entered. *See* Dkt. 193-1 at 74-99. Again, it is not true that NDG sold Products after the Injunction was entered, and Exhibit C does not show otherwise. As I explained at the 2019 hearing when questioned about this document, it shows <u>charges</u> to third parties seeking payment for sales already made, not sales of watches to those parties—on behalf of First SBF Holding, not NDG. *See* Dkt. 186-3 (transcript of Mar. 5, 2019 hearing) at 16:3-19; 134:9-135:25. That is why, for instance, each line item on the document is labeled 'invoice' at the far left.

17. Finally, I note that NDG continues to have multi-

million dollar claims against it to this day. As noted above and in my September 20, 2022 declaration, NDG has no assets and is not paying the fees for Reed Smith LLP's work as counsel in this action. In sum, NDG cannot afford to pay the fees and sanctions that Vertime seeks to impose. Moreover, although I stress that at all times NDG acted in the sincere belief that it was not violating the Court's orders, to the extent the Court does find that any wrongdoing has been committed, NDG has already suffered the severe consequences of going out of business and into bankruptcy. I respectfully submit that imposing further financial penalties that NDG cannot pay in any event would not serve any useful purpose.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on December 22, 2025.

SAMUEL FRIEDMANN