UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------:
VERTIME B.V.

                               Plaintiff,

               - against -              Case No.  7:17-cv-03844-KMK

NEW DOVER GROUP, LTD.

                         Defendant.
------------------------------------------------------------------:

**MEMORANDUM OF LAW OF THIRD PARTIES CHAIM FISCHER AND STUHRLING ENTITIES IN OPPOSITION TO PLAINTIFF'S STATEMENT OF DAMAGES**

# Table of Contents

**I.    INTRODUCTION** ................................................................................................................ 3

    **a.    There is no basis to conclude that Fischer-Stuhrling has liability in this matter** ....... 3

    **b.    The Damages Brief fails to detail the Plaintiff's damages** ............................................ 4

    **c.    Receiver** ......................................................................................................................... 4

    **d.    Attorney Fees** ............................................................................................................... 5

    **e.    Disgorgement** ............................................................................................................... 7

**III.    CONCLUSION** ................................................................................................................. 9

# I.    INTRODUCTION

Chaim Fischer, Stuhrling Original, LLC, and Stuhrling Outlet (collectively, "Fischer-Stuhrling"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to plaintiff Vertime B.V.'s ("Vertime") Submission in Support of its Claim for Damages for Contempt filed December 5, 2025 ("Statement of Damages"), in connection with Vertime's third motion for contempt, sanctions, and to appoint a receiver (the "Motion") related to this Court's June 15, 2017 preliminary injunction (the "Injunction").[1]

# II.    ARGUMENT

## a.    There is no basis to conclude that Fischer-Stuhrling has liability in this matter

Fischer-Stuhrling adopts by reference all arguments made by NDG in its opposition to the Plaintiff's statement of damages as if fully set forth herein. Further, Fischer-Stuhrling reiterates all arguments made in its initial opposition to the motion, and believes that the motion should be denied in its entirety as Vertime has failed to meet its evidentiary burden as to establish liability on the part of Fischer-Stuhrling, as set forth in detail in the initial opposition.

As set forth in NDG's brief, there simply is no evidence that a transaction occurred after the entry of an injunction that violated said injunction. Fischer-Stuhrling only became a party to the injunction in mid-2018, and there is no dispute that not a single sale of the subject watches has occurred since that time. Despite the lack of any evidence of any violation by Fischer-Stuhrling of any order applicable to it; zero evidence that Mr. Fischer had any knowledge of any injunction applicable to NDG, and the clear evidence that not a single sale has occurred since Fischer-

---

[1] The Statement of Damages consistently refers to Defendant New Dover Group ("NDG") together with Chaim Fischer, Stuhrling Original, LLC, and Stuhrling Outlet as "defendants." Not only is this incorrect—Fischer-Stuhrling are not defendants—it is a material mischaracterization: it elides that Fischer-Stuhrling was not named in the Injunction or bound by it until the Injunction was modified in mid-2018, such that Vertime must prove the heightened showing that Fischer-Stuhrling "acted in concert with" NDG in order to subject Fischer-Stuhrling to contempt at all.

Stuhrling was added to the injunction, the Court directed Plaintiff to brief its claimed damages. In its brief, the Plaintiff continues to re-argue the same points, but this brief will focus on the claimed damages, to the extent same were not previously addressed in prior briefing.

**b. The Damages Brief fails to detail the Plaintiff's damages**

Other than setting forth approximately 120 pages in billing for attorney fees, the Plaintiff provides no basis to compute damages. The legal fee invoices do not substantiate which fees relate to the alleged violation of the injunction, as opposed to the general need for litigation of the action, and then reargue claims made ineffectively in Plaintiff's merits brief from several years ago. Notably, nothing has occurred in the prosecution of the merits of this action since the entry of the preliminary injunction, and the Plaintiff does not appear to be taking any steps to move the case forward on the merits. The Plaintiff's submission reinforces that this action is not about the merits, but speciously trying to substitute Fischer-Stuhrling for the defunct NDG as a source of a potential recovery.

As noted by NDG, the alleged contempt of the injunction was one transaction in 2017. Mr. Fischer made it clear that he had no knowledge of the court proceedings and any injunction when he entered into the transaction with Mr. Friedmann, as he was attempting to help his brother in law out of a messy situation while also trying to keep his risk low. There is no justification for imposing damages of close to a million dollars on the record submitted by the Plaintiff, even if the Court believed that some violation of the injunction had occurred.

**c. Receiver**

As noted in the initial opposition brief by Fischer-Stuhrling, a receivership is simply not justified. In 2022, the watches had been sitting safely in Stuhrling's Brooklyn warehouse, with no compensation to Stuhrling. Not a single one of the watches has been touched since the entry of

the expanded in junction in the middle of 2018. As the watches are being securely held in Fischer-Stuhrling's warehouse, there simply is no need for the entry of an order appointing a receiver. NDG has amply addressed the case law and Plaintiff's abject failure in justifying such an extraordinary remedy on these facts.

As to the proposed receiver, Vertime proposes that its own logistics provider take control of the watches and presumably will be able to mix these watches with those actually being owned by Vertime. It is undisputed that Vertime does not currently own the watches, and has no right to their possession. Allowing a receiver who is essentially the alter ego of Vertime would be inappropriate, even if there was nay basis for the appointment of a receiver.

Fischer-Stuhrling adopts the position of NDG as to the payment of the costs of the receivership in its entirety. The Court should simply deny this requested relief in its entirety.

### d. Attorney Fees

As noted by NDG, the imposition of attorney fees requires a showing of willfulness. The Plaintiff cannot even show that Mr. Fischer was aware of the injunction when it was allegedly violated, so it certainly cannot be willful. If anything, the only basis to conclude that the injunction was violated would require crediting Mr. Friedmann's testimony that he intentionally hid the facts of the injunction from Mr. Fischer, which would preclude a finding that Mr. Fischer (and by extension, the Stuhrling entities) had acted willfully.

The brief alleges that Fischer-Stuhrling was aware of the injunction by January 2018. This statement is neither established by the testimony, in which Mr. Fischer denied being aware of the injunction until much later, but does not establish a reasonable conclusion that Mr. Fischer was aware that the injunction applied to the sale of the watches by his entities. There simply is no reason for a third party to believe that the receipt of a subpoena by his employee would mean that

he was bound by an injunction in a case that he was not a party.  There simply is no basis to conclude that Fischer-Stuhrling willfully violated the injunction.  Plaintiff wanted its subpoena to force the cessation of Fischer-Stuhrling's sales, but that does not mean that the subpoena put Fischer-Stuhrling on notice of it.

Fischer-Stuhrling adopts the position of NDG as to the specifics of the attorney fees being billed.  They are simply excessive for the reasons noted by NDG.  Fischer-Stuhrling will note much of the time billed relates to ensuring the service of the initial injunction in June 2017, which has nothing to do with Fischer-Stuhrling.  The invoices also note a 10% reduction on fees, but it is unclear if the Plaintiff is seeking the fees paid without the reduction provided by counsel.  Similarly, Plaintiff is seeking compensation for work on ordinary case expenses such as preparation of the joint discovery plan, objections to discovery demands on Timex, Vertime and others that have nothing to do with the injunction.  Plaintiff is also seeking compensation for travel time for a deposition when the Plaintiff hired counsel at a significant distance from the action and the depositions were held in Westchester County near the Courthouse.

Fischer-Stuhrling generally complied with all discovery requests made by subpoena to Mr. Fischer and to Evergreen Creations.  While there were typical motion practice to quash and compel, which ultimately resulted in the imposition of a protective order, it is unreasonable to force Fischer-Stuhrling to pay for the fees related to typical discovery issues, which also include numerous communications between counsel to determine the scope of discovery, provide documents and schedule depositions.

Notably, the first time that Plaintiff demanded that Fischer-Stuhrling cease sales of the watches was on June 28, 2018 (by which time they had largely already ceased).  There is no basis to provide legal fees from Fischer-Stuhrling for work that occurred prior to this date, while the

6

Plaintiff failed to even request that Fischer-Stuhrling cease sales. The demand for attorney's fees is excessive and without merit.

### e. Disgorgement

Plaintiff has not set forth a stronger argument for disgorgement at this point then it did in its original briefing on the subject. The Plaintiff assumes without any evidence that Fischer-Stuhrling made a profit on its sales. As Fischer-Stuhrling's sales were never covered by the injunction it makes no sense to ask for a disgorgement of Fischer-Stihrling's alleged profits. More importantly, Plaintiff has no information, and the parties conducted no discovery, on the profits made by Fischer-Stuhrling on the sales. The only figures are the payments made to NDG after the sales by Fischer Stuhrling. Plaintiff wrongly imagines that the sales were profitable, but that is at odds with Mr. Fischer's testimony.

He testified at the hearing that the sales were not generally very profitable and he ceased individual retail sales around Passover in April 2018. Hr. Tr. 179:22-180:2 The sales did not only require payment for the goods sold to NDG, but also requires sales commissions to salespeople and payments for using the Amazon platform. The larger block sales also would require sales expenses, shipping and other costs related to the sale of watches. Plaintiff never inquired as to these costs and presents no basis to determine the profits. As the parties were directed to address the damages after the determination of liability, these issues were not fully developed. If the Court determines that disgorgement is an appropriate remedy, and it should not, then Fischer-Stuhrling would ask for time to locate all records related to the sales expenses to the transactions. As these transactions occurred around 8 years ago, it would take some time to locate and Mr. Fischer has not been able to do so over the last several weeks.

Aside from the selling expenses, Vertime ignores that goods have now been enjoined for 7 years and have been sitting in Stuhrling's warehouse with no ability to sell them, but occupying space that could have been put to more profitable use.  Fischer-Stuhrling's intent here was to make a profit on the whole package, but has actually lost substantial amounts as the package has largely been frozen in time.  Even if the watches could be sold today, they would have limited value and would have substantial expense in verifying whether the watches work and replacing batteries that have died.  Any analysis of profit must take the entire circumstance into account, not just the limited facts that Vertime suggests work in its favor.

Furthermore, Vertime asks only for disgorgement of sales from January 19, 2018, but has not provided any analysis of the amount of sales and payments to NDG for the watches in this period of time.  Vertime simply elides over this and suggests the total sum of sales revenues received by Fischer-Stuhrling and subtracts the total payments to NDG.  Hundreds of thousands of dollars occurred before that date, yet the Plaintiff fails to mention that fact in its statement of damages.  Any analysis of this issue would require line by line analysis of the sales, something that Vertime has not attempted in its misleading briefing.

There is no evidence that Vertime would be able to have sold the goods that are at issue.  First, the goods simply do not belong to Vertime and Vertime had no right to sell these goods.  They were already sold by Vertime to NDG, and thus they had no reasonable expectation to sell the goods without first repurchasing them.  They have made no effort to conclude this litigation and determine their right to resell the goods.  Whether another distributor would sell watches is simply unable to be proven.  The watches were already largely old and end of life products at the time that Fischer-Stuhrling took them and began selling them.  They were not watches that would otherwise be sold by Vertime as new.  Further, Vertime's sales to a distributor are not the lost

profits here. Vertime already made those profits at the time that it sold the goods to NDG. The sales that would theoretically have been lost are those of Vertime's distributor in the retail channel, but Vertime's distributor is not a party and no evidence has been presented to demonstrate any such losses.

As noted by NDG, and in Fischer-Stuhrling's original opposition, disgorgement is simply the wrong remedy for a case where the Plaintiff cannot show any lost sales. Vertime is not the distributor of the goods, and had already sold them to NDG. Any use of disgorgement as a measure of profits would constitute a criminal contempt sanction and would not serve to reimburse Vertime for actual losses (which it has not attempted to prove) or to otherwise undo the effects of the alleged contempt.

### III.    CONCLUSION

For these reasons, the third parties, Chaim Fischer and the Stuhrling entities respectfully request that the Court deny the motion for contempt and sanctions.

Dated: December 22, 2025

/s/ Avram E. Frisch_____
Avram E. Frisch